933 A.2d 528

Stephon COLLINS et al.

v.

Gui–Fu LI et al.

Michael Chapman et al.

v.

Gui–Fu Li et al.

Nos. 1297, Sept. Term, 2005, 590, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Oct. 2, 2007.

504

506

510

512

Catherine D. Bertram, Washington, DC, and Stewart A. Sutton, Germantown (Patrick M. Regan, Regan, Zambri & Long, PLLC, Washington, DC, Clifford Sobin, Berman, Sobin & Gross, Gaithersburg), on the brief, for appellant.

Kevin Arthur, Patrick Cullen and Jonathan A. Cusson, Baltimore, Paul Urey, Dunkirk, Benjamin E. Zuckerman, Philadelphia, PA (Robert H. Bouse, Jr., Anderson, Coe & King, LLP, Baltimore, James S. Wilson, Joan F. Brault, Brault & Graham, LLC, Rockville, James H. Heller, Elizabeth C. Bailey, Cozen O'Connor, Philadelphia, PA), on the brief, for appellee.

Panel: DAVIS, KRAUSER, MEREDITH, JJ.

DAVIS, J.

On June 14, 1998, Samuel Juster and Stephon Collins, Jr., the sons of appellants Collins and Juster, perished in a house fire. Appellants' children were overnight guests of appellants, the Chapmans, who rented a single family residence, located at 23 Grantchester Place (Grantchester Place) in Gaithersburg, Maryland, from appellees, Mr. and Mrs. Gui–Fu Li (The Lis).

Kyle Chapman, the son of appellant, Michael Chapman, was severely burned as a result of the fire and both of his legs were amputated. Other Chapman family members also suffered injuries. The three Chapman children, as well as Samuel Juster and Stephon Collins, Jr. had been sleeping in a bedroom in the basement of the home.

The fire was caused by a candle in the basement, which was being used during an area-wide electrical outage caused by severe thunderstorms. Due to the power outage, the AC-powered smoke detector in the basement was not activated.

In the Circuit Court for Montgomery County, appellants sued Gui–Fu Li and Chung Ling Li as landlords of the home. Appellants also sued Pittway Corporation, First Alert, Inc., Sunbeam Corporation, BRK Brands, Inc. and Honeywell International, Inc. (the manufacturer defendants), as manufacturers of the smoke detectors in the subject home. Appellants sued the Ryland Group, Inc. (Ryland) as the builder of the home and Summit Electric Co. (Summit) as the electrical subcontractor, for failing to install dual-power smoke detectors, e.g., AC-power with a safety battery back-up, when the home was built in 1989 and for failing to provide the homeowner with the User's Manual for the AC-power smoke detectors. Appellants sued David Dieffenbach as well as his employee Kevin Hightower, alleging that they renovated the basement without permits in 1994, that they failed to replace the AC-power smoke detectors with dual-power smoke detectors and that they failed to warn the owners and occupants that the enclosed rooms in the basement could not be used as sleeping areas.

On January 3, 2002, the trial court heard arguments and granted several motions. The Motions for Summary Judgment of appellees Dieffenbach and Hightower were granted. The Motion to Dismiss of appellee Ryland was granted. The Motion to Dismiss or in the Alternative, Motion for Summary Judgment of appellee Summit was granted. Appellants' Motion for Reconsideration as to Ryland and Summit was denied on March 26, 2002.

Following dismissal of Ryland and Summit, appellants voluntarily dismissed all claims against the remaining defendants, Gui–Fu Li, Chung Ling–Li and the manufacturer defendants. Appellants then filed an appeal against Ryland and Summit, in which this Court concluded that the voluntary dismissals were inappropriate and vacated them, remanding the case to the circuit court for further proceedings. On October 27, 2004, appellants filed a Re–Filed Omnibus Amended Complaint against appellees in this case.

After the case was refiled, the circuit court granted the Motion to Dismiss of the manufacturer defendants. Appellees Gui–Fu Li and Chung Ling Li then filed a Motion to Dismiss the claims on March 29,2006 asserted by the Chapman appellants and the circuit court granted this motion on April 20, 2006.

Appellants Collins and Juster and the Chapman appellants filed this timely appeal, presenting the following issues for our review, which we have rephrased and reordered: [1]

---

1. The issues on appeal, as framed by appellants, are:

I. Whether the court erred as a matter of law by granting appellees, the Manufacturer Defendants' Motion to Dismiss under Maryland Rule 2–322 on the grounds that the Omnibus Amended Complaint failed to include a well-pled allegation of proximate cause with regard to the injuries sustained in the instant house fire, despite the fact that the Manufacturer Defendants conceded for purposes of the argument that the smoke detector it manufactured was defective and inoperable on the evening in question and despite the fact that the Complaint expressly alleged that the defective and inoperable smoke detector was a substantial factor in causing the injuries at bar. II. Whether the court erred as a matter of law by granting appellees, Gui–Fu Li and Chung Ling Li's Motion to Dismiss the claims asserted by the Chapman appellants under Maryland Rule 2–322 on the grounds that the Omnibus Amended Complaint failed to include a well-pled allegation of proximate cause with regard to the injuries sustained in the instant house fire, despite the fact that the Lis refinished the basement without obtaining permits which would have barred the use of the basement as a sleeping area, despite the fact that the Lis themselves and/or their agents made material representations that the enclosed basement rooms could be used as sleeping areas, and the Lis knew and condoned such use by the Chapmans, and despite the fact that the Complaint expressly alleged that the

I. Whether the circuit court erred in determining, pursuant to motions to dismiss filed by the manufacturer defendants, Ryland Homes, Summit Electric and the Lis, that the alleged intervening acts of negligence set forth in

defective smoke/fire detector and the use of the basement as a sleeping area were substantial factors in causing the injuries at bar. III. Whether the court erred as a matter of law by granting appellee Ryland Group's Motion to Dismiss under Maryland Rule 2–322 on the grounds that the Omnibus Amended Complaint failed to include a well-pled allegation of proximate cause with regard to the injuries sustained in the instant house fire, despite the fact that Ryland conceded for purposes of the argument that the smoke detector it installed was defective and inoperable on the evening in question and despite the fact that the Complaint expressly alleged that the defective and inoperable smoke detector was a substantial factor in causing the injuries at bar.

IV. Whether the court erred as a matter of law by granting Summit Electric Co.'s Motion to Dismiss under Maryland Rule 2–322 on the grounds that the Omnibus Amended Complaint failed to include a well-pled allegation of proximate cause with regard to the injuries sustained in the instant house fire, despite the fact that Summit conceded for purposes of the argument that the smoke detector it installed was defective and inoperable on the evening in question and despite the fact that the Complaint expressly alleged that the defective and inoperable smoke detector was a substantial factor in causing the injuries at bar.

V. Whether the court, to the extent it considered the motions of Ryland and Summit in response to the Omnibus Amended Complaint under the summary judgment standards of Maryland Rule 2–501, erred by not continuing, under the provisions of Rule 2–501(d), the hearing on Appellees Ryland Group and Summit Electric Co.'s Motions until discovery was completed.

VI. Whether the court erred as a matter of law by granting appellees Dieffenbach and Hightower's Motions for Summary Judgment, because the issue of causation, including whether or not an intervening act is "foreseeable," is a question of fact for the jury to resolve.

A. Whether appellees Dieffenbach and Hightower's failure to apply for the proper permits in conjunction with the renovation of the home's basement, thereby depriving the City of Gaithersburg the opportunity to warn the occupants that the basements could not be legally used as sleeping areas, proximately caused the deaths of and injuries to appellants' children[.]

B. Whether appellees Dieffenbach and Hightower had a duty to replace or recommend that the outdated AC-power smoke detector in the basement be replaced with a dual-power smoke detector[.]

the Re–Filed Omnibus Amended Complaint constituted a superseding cause, relieving

 A. the manufacturer defendants of liability for negligence, design defect, failure to warn, strict liability, breach of express warranty and breach of implied warranties of fitness for a particular purpose and merchantability;

 B. Ryland Homes and Summit Electric of liability for negligence, strict liability and failure to warn and whether the circuit court erred in denying appellants' request for a continuance to conduct further discovery in proceeding against Ryland Homes; and

 C. the Lis of liability for negligence, violation of building codes and violation of the Consumer Protection Act.

II. Whether the circuit court erred in granting the motion for summary judgment filed by appellees Dieffenbach and Hightower, finding, as a matter of law, that the undisputed facts did not support appellants' claims that Dieffenbach and Hightower

 A. had a duty to warn that the enclosed basement rooms could not be used as sleeping areas;

 B. were liable by reason in their failure to apply for and obtain the proper working permits before commencing repairs to the basement of the subject property, thereby preventing inspectors from the City of Gaithersburg from discovering that the basement was being used improperly as a sleeping area and consequently, preventing the inspectors from warning the occupants of the violation; and

 C. had a duty to replace or recommend that the AC power smoke/fire detector be upgraded to one with an alternative power source of when they installed two or three new electrical outlets in the basement after it had flooded in 1994.

---

C. Whether appellees Dieffenbach and Hightower had a duty to warn the owners and/or occupants of the single-family home that the enclosed basement rooms could not be used as sleeping areas[.]

Because the circuit court was limited, on the motions to dismiss, to facts susceptible of but one inference, we shall hold that it erred in determining whether the intervening acts of negligence constituted a superseding cause, relieving the manufacturer defendants, Summit Electric, Ryland Homes and Gui–Fu Li and Chung Ling Li of liability for the deaths and injuries sustained. We shall affirm the grant of the motions for summary judgment filed by David Dieffenbach and Kevin Hightower and hold that appellants failed to establish that they had a legally cognizable duty with reference to the deaths and injuries sustained by the Collins, Juster and Chapman children. Finally, in light of our decision regarding the grant of Ryland's motion to dismiss, we need not reach the court's denial of appellants' request for a continuance to conduct further discovery as to its claim against Ryland Homes.

## FACTUAL AND PROCEDURAL BACKGROUND

Gui–Fu Li and Chung Ling Li purchased residential property located at 23 Grantchester Place in Gaithersburg, Maryland from the Ryland Group in 1989. Appellee Ryland Group was the builder of Grantchester Place and Summit was the electrical subcontractor. When the home was built in 1989, appellees Ryland and Summit installed an AC-power smoke detector that was hard wired into the home's electrical system, but that did not have a safety battery back-up on each level of the home. Gui–Fu Li, a chiropractor, renovated the basement for a medical office; these renovations, however, were performed without a building permit. When Dr. Li began to treat his acupuncture patients in the finished basement, neighbors complained to the City of Gaithersburg about his home medical office and he was cited for a zoning violation on June 6, 1989. After the Lis were denied permission for a zoning variance for a home medical office, they relocated their residence and, thereafter, sought to rent Grantchester Place.

Michael Chapman and the Lis signed a rental agreement on August 13, 1991 and the Lis applied for and obtained a Rental License from the City of Gaithersburg on August 29, 1991. The enclosed basement rooms had been used as bedrooms by

the Chapman children and the sleep-over guests of their children since 1994. Mr. Chapman lived in the home with his wife, Catherine Chapman, and their children, including his three boys from his prior marriage, Keith, Brandon and Kyle Chapman.

Grantchester Place had a finished basement, which had three enclosed rooms: (a) Brandon and Kyle Chapman's bedroom, (b) Keith Chapman's bedroom, and (c) Mr. Chapman's computer room/office. The two basement bedrooms did not have any windows.

In early 1994, a water pipe burst in Grantchester Place, causing extensive damage, especially to the basement, where a foot of water had accumulated. On February 2, 1994, appellee, David E. Dieffenbach, trading as DEDHICO Home Improvements, submitted a written proposal to the Lis and Mr. Chapman to repair the water damage for a total of $28,060. The contract itself indicates that "[t]he existing metal stud framing will be replaced and repaired to facilitate replacement of the walls." Dieffenbach did not apply for and thus never obtained a building permit.

Dieffenbach subsequently submitted two invoices for extra work, which both showed that twenty electrical outlets in the basement were cleaned and re-wired by an electrician at $17.50 per outlet for a total cost of $350. Kevin Hightower, who is a journeyman electrician and an employee of Dieffenbach, performed the electrical re-wiring work.

Hightower admitted that he installed two or three new electrical outlets in the basement. Neither Dieffenbach nor Hightower obtained a permit for the electrical work performed from the City of Gaithersburg and they conceded that they were required by law to apply for an electrical permit. As a result of appellees' failure to apply for a building and/or electrical permit, the City of Gaithersburg did not inspect the work performed by appellees Dieffenbach and Hightower.

Neither the Lis, Dieffenbach or Hightower undertook to upgrade the basement's AC-power smoke detector to dual-power smoke detector in conjunction with the renovation

project or to recommend an upgrade or to warn the owners or occupants of the limitations of the AC-power smoke detector.

On Saturday, June 13, 1998, thirteen-year-old, Stephon Collins, Jr. and twelve-year-old Samuel Juster were overnight guests of Keith, Brandon and twelve-year-old Kyle, the three sons of Michael Chapman and Carolyn Hill Chapman, at Grantchester Place. That evening, powerful thunderstorms caused an area-wide electrical power outage. In order to provide lighting in order that Brandon, Kyle and Keith, and their friends, Samuel and Stephon could continue playing their game of Monopoly, they lit approximately six candles in the basement bedroom where Kyle and Brandon slept.

Keith Chapman, then seventeen years old, was the last of the boys to retire. He extinguished all but one of the candles at approximately 4:30 a.m. and removed the one remaining lit candle from Kyle's and Brandon's bedroom, leaving it on a triangular corner unit in the basement's main recreational room. Keith Chapman estimated that he went to bed at approximately 4:45 a.m.

Some time around 5:00 a.m., Sunday, June 14, 1998, the candle that was left burning on the triangular corner unit in the basement's main recreational room ignited a fire. Both the Fire Investigation Report of the Bureau of Alcohol, Tobacco and Fire Arms and the Event Report of the Montgomery County Police Department concluded that the fire was ignited by the candle left on the triangular corner unit. As noted, the smoke detector located in the basement did not trigger an alarm due to the lack of a back-up power source. Stephon Collins, Jr. and Samuel Juster perished as a result of the fire; Kyle Chapman suffered severe burns requiring the amputation of both legs and the minor Chapman children suffered burns and injuries to their respiratory systems.

### THE RE-FILED OMNIBUS AMENDED COMPLAINT

Appellants' sixty-one-page Re-filed Omnibus Amended Complaint contains twenty-six counts, all of which aver acts or omissions by the defendants in relation to the smoke detectors

and lack of emergency egress at Grantchester Place. The essence of the Complaint is that all of the defendants, by their acts and omissions, were in some way responsible for the lack of adequate warning to the victims of the impending conflagration, which appellants claim, resulted from the fact that the smoke detector did not have "a battery back-up, or other alternative safety power source in the event of an electrical outage or short." The appellants also claim that the injuries and deaths were proximately caused by various acts and omissions by the Lis, resulting in the unauthorized use of an area in the basement for bedrooms.

Count I and II, ¶¶ 39 through 46, as to the Lis, allege negligence, violation of the Consumer Protection Act and wrongful death as to the Juster and Collins appellants. Alleging that the Collins, Juster and Chapman boys sustained injuries and deaths because they were unable to escape the windowless bedrooms due to lack of any means of egress, the Re–Filed Omnibus Amended Complaint recites that, had the Lis not performed the unauthorized renovation of the basement area for use as a home medical office, it "would have remained an empty concrete shell without even electrical outlets [under which] inhospitable conditions, the children would not have used the Chapman's basement as a sleeping area on June 14, 1998; and [appellants'] children would not have perished." An affirmative duty is also alleged, *i.e.*, that, had the Lis "warned their tenants, [appellants'] children would not have been sleeping in the enclosed basement bedrooms. . . ."

The Complaint alleges the following sequence of events which constitute the negligent acts by the Lis, resulting in the injuries and deaths:

| Negligent Conduct | Alleged Causation |
|---|---|
| The Lis finished their basement without obtaining any of the proper building permits from the City of Gaithersburg; they also made repairs to their home as a result of water damage caused by a broken pipe in early | Had they applied for a permit in either 1989 or 1994, they would have been required to submit a floor plan indicating the intended uses of the enclosed rooms in the basement and [t]he City of Gaithersburg would have |

1994 without obtaining any of the proper building permits.

informed them that the enclosed rooms could not be used as sleeping areas due to the lack of emergency egress windows;

The Lis, presumed, as landlords, to know the applicable codes pertaining to habitability of the leased premises, failed to inform their tenants that they could not use the enclosed basement rooms as sleeping areas and made material representations that the enclosed basement rooms could be used as sleeping areas and condoned the Chapmans' use of these rooms as sleeping areas.

The children perished and were injured because of the Chapmans' illegal use of the basement rooms for sleeping areas, which was the foreseeable result of finishing off the basement and having repairs done with permits and the reliance on the Lis' initial representations and subsequent omission since both renting the home, renewing their lease, and using the basement as sleeping areas.

Code violation: the Lis knew or should have known about a recall of the smoke detectors by the manufacturer; that by the time of the fire on June 14, 1998, the Gaithersburg Building Code required dual power or battery-operated smoke/fire detectors.

Failure to replace defective smoke/fire detectors with dual power or battery-operated smoke/fire detectors which would have warned the occupants of the fire resulted in their deaths and injuries.

Violation of Consumer Protection Act: The Lis "had actual and/or constructive knowledge that the enclosed rooms in the basement could not be used as sleeping areas due to the applicable housing and rental codes and, as such, the basement rooms were not habitable."

The injuries to and demise of the children were the result of the use of the enclosed rooms in violation of the Act's requirement of habitability.

Counts III, IV, V, VI and VII, ¶¶ 47 through 74, of the Refiled Omnibus Amended Complaint allege, as to the manufacturer defendants, negligence, strict liability—design defect and failure to warn of the limitations of the smoke/fire detector, *e.g.*, failing to include information, warning or labeling regarding a lack of a battery back-up or alternative safety power source; breach of implied warranty; and breach of express warranty and survivor action, all stemming from the lack of a battery back-up system. These Counts allege that, as a direct and proximate result of the defendants' acts, omissions and duties, principally, "the failure to equip the detector at issue with a battery back-up or other alternative safety power source," the "fire [and] smoke [ ] could not be detected, and thus no alert sounded to [appellants]" who "did

not have a reasonable opportunity to and could not escape the burning residence."

| CAUSE OF ACTION | TORTIOUS CONDUCT |
|---|---|
| ¶¶ 47-56: Strict Liability—Design Defect and Failure to Warn | Asserting that the lack of a battery back-up constituted a defect, this Count alleges strict liability against the manufacturer defendants for placing in the stream of commerce a defective product and for failing to warn of its limitations, i.e., that it would not operate during an electrical shortage or a power outage. |
| ¶¶ 57 and 60: Negligence, Wrongful Death | The manufacture defendants breached duty of care with regard to the design and supervision of the manufacture and distribution of the product without battery back-up, by failing to provide consumer with adequate warnings concerning the know limitation and by failing to modify the design or notice of similar incidents. |
| ¶¶ 63-67 Breach of Implied Warranty; Annotated Code of Maryland, Commercial Law Article, §§ 2-314, 2-315 and 2-318 | The manufacture defendants breached the implied warranty of merchantability and fitness for particular purpose in warranting to the public that their product was fit for the intended purpose of the early detection and alert of smoke and/or fires. |
| ¶¶ 68-71 Breach of Express Warranty | The manufacturer defendants, through their marketing, advertisements, warranties, sales literature, owners manuals, and other representations breached their express warranty that their product would provide an advance warning of smoke and/or fires. |
| ¶¶ 72-74: Survival Action as to Collins and Juster appellants | All of the causes of action against the manufacturer defendants were incorporated by reference in this Count. |

Appellants, as to Ryland Homes and Summit Electric, in their Re–Filed Omnibus Amended Complaint in Counts VIII to XV, allege negligence, strict liability—failure to warn, wrongful death, survival actions and vicarious liability.

| CAUSE OF ACTION | TORTIOUS CONDUCT |
|---|---|
| ¶¶ 75-94: Negligence, Wrongful Death Strict Liability, Failure to Warn and Survival Actions Against Summit Electric | Summit Electric, as the electrical contractor for Ryland Homes, is alleged to have selected the particular model, that was defective in design, at the time it left Summit's control, and participated in the selling, placing it into the stream of commerce and installed it into the residence, failing to advise, instruct, and/or warn [ ] of the limitations of the smoke/fire detector [and] by failing to include and/or convey any information, warning or labeling regarding their lack of a battery back-up or alternative safety power source. Summit failed to provide the Lis, as the original purchasers of the home, the instructional materials and/or packaging and, having failed to deliver materials which warned that the detector would not function during a power outage, neither the Lis or the Chapmans knew of its limitations and the Chapmans, as a result, permitted their children to use candles during the power outage. |
| ¶¶ 95-120: Negligence, Wrongful Death, Strict Liability, Failure to Warn, Survival Action and Vicarious Liability against Ryland Homes | Ryland Homes, in its capacity as the builder for whom Summit Electric was employed, is likewise alleged to have participated in the selling and placing into the stream of commerce a defective product and failing to warn of limitations of smoke detector. Ryland Homes, like Summit, is alleged to have failed to deliver materials which would have warned the Lis and the Chapmans that the detector would not function during a power outage. Vicarious liability is alleged against the Ryland Group, in ¶¶ 95-120, for any negligence that may have been committed by Summit Electric. |

Finally, Count XVI alleges that Kevin Hightower, in 1994, as agent, servant and/or employee for David E. Dieffenbach, trading as Dedhico Home Improvements, was retained to repair and replace, among other things, the metal stud framing, drywall and insulation at Grantchester Place; his alleged liability is based on the following:

| CAUSE OF ACTION | TORTIOUS CONDUCT |
|---|---|
| ¶¶ 121-129: Negligence, Wrongful Death, Survival Action against Kevin Hightower | Kevin Hightower failed to obtain permits prior to the commencement of repairs in the basement of Grantchester Place which, it is alleged was in violation of the Gaithersburg Building Code. Authorities would have been alerted had application for the required permits been made and they would have served notice that the enclosed rooms could not be used for bedrooms. It is also alleged that the building code required that Hightower install smoke/fire detectors when alterations, repairs or additions requiring a permit or "when one or more sleeping rooms are added or created in existing dwellings." Had Hightower installed the dual power or battery-operated smoke/fire detector, according to the Complaint, the occupants would have been warned of the fire, and the decedents would not have perished. |
| ¶¶ 130-143: Negligence, Wrongful Death Survival Action, Vicarious Liability as to David E. Dieffenbach, Trading as Dedhico Home Improvements | David Dieffenbach, as Hightower's employer, is alleged to have breached his duty to obtain the proper building permits, recommend the replacement of the hardwired smoke detector and/or replace the hardwired smoked detector. |

## APPELLANTS' DISMISSED CLAIMS OTHER PARTIES

### 1. CITY OF GAITHERSBURG AND VICTOR GREENBLATT

The City of Gaithersburg requires a bi-annual inspection of rental property. On March 4, 1998, Victor Greenblatt, in his capacity as a rental inspector for the City of Gaithersburg, conducted only the second rental inspection of Grantchester Place and noted five minor matters that needed to be corrected. None of these violations were in the basement or concerned using the basement rooms as sleeping areas.

Apparently, these minor violations were corrected. The City of Gaithersburg conducted a re-inspection of the home on April 16, 1998 and issued a Final Rental Housing License on April 17, 1998. The April 16, 1998 re-inspection did not include an inspection of the basement because no violations had been found in the basement on March 4, 1998.

The City of Gaithersburg successfully moved for summary judgment against appellants' claims on the grounds that no private cause of action exists against a municipality when it fails to enforce its own safety regulations. *Willow Tree Learning Ctr., Inc. v. Prince George's County*, 85 Md.App. 508, 515, 584 A.2d 157 (1991) (holding that duty of county and inspector under statute and ordinance to ensure safety of playground equipment at a daycare center was owed to public generally and could not be the basis for a negligence cause of action brought by a parent of an injured child).

The Court entered the following Orders:

| | |
|---|---|
| November 9, 2000: | The court denied appellants' Motion for Summary Judgment. |
| March 26, 2002: | The court denied appellants' Motion for Reconsideration. |
| August 1, 2002: | The court granted the Joint Motion by [appellants] for Voluntary Dismissal Without Prejudice of the Manufacturer Defendants. |
| November 18, 2002: | The court granted appellants' and appellees' voluntary dismissal without prejudice of all claims asserted between the Chapmans and the Lis. |
| December 4, 2002: | The court granted the motion for summary judgment of [appellees] David Dieffenbach and Kevin Hightower seeking dismissal of all claims asserted in [appellants'] Omnibus Amended Complaint. |
| January 22, 2003: | The court granted [appellants'] motion to dismiss of their claims against [appellees] Lis and Chapmans with prejudice. |
| July 19, 2005: | The court granted appellee Summit Electric Company's Motion to Dismiss Re–Filed Omnibus Amended Complaint and Ordered that all claims and cross-claims against Summit be dismissed with prejudice and without leave to amend. |
| April 20, 2006: | The court granted the Lis' Motion to Dismiss. |

## CIRCUIT COURT RULINGS

On June 24, 2005, the court initially rejected appellants' argument that the concept of superseding cause does not apply in product liability cases, except where the product is misused in an unforeseeable manner, including that the authority upon which appellants relied addresses only the concepts of causation and foreseeability as it relates to the misuse of a product. Turning to its analysis of superseding cause, the court cited the factors enumerated in *Restatement (Second)*, § 442(2), the lapse of time and whether the intervening act involves criminal conduct as opposed to negligence.

After reciting the sequence of events prior to the fire, the court essentially summarized appellants' allegations as set forth in the Re–Filed Omnibus Amended Complaint. Identifying whether the intervening event suffices, in law, to break the chain of causation between the injury and the negligent conduct as the issue before it, the court opined that it believed that the focus of the inquiry should be primarily on the nature of the intervening acts. Tracking essentially the deleterious effects of the various acts of negligence as set forth in the Complaint, *e.g.*, had the Lis not allowed the use of the enclosed rooms without emergency egress as sleeping areas, the boys would not have been located where they could not escape the fire, the court issued its ruling: "As a matter of law, it was not foreseeable when the smoke detectors were manufactured in 1989 that so many different substantial intervening acts of negligence, including violations of law, would occur so as to link the 'Manufacturer Defendants' alleged negligent act to the Plaintiffs' injuries nine years later. Those intervening acts constitute a superseding cause of the Plaintiffs' injuries."

On January 3, 2002, counsel for Ryland responded to appellants' request for continuance by reiterating, "It doesn't matter, for purposes of my motion, what they say witnesses have said in the 18 months of discovery that took place before anybody thought to add my client to the case. . . . The only thing that matters is what they have said in the well-pleaded factual allegations of their complaint." Notwithstanding, the circuit court accommodated the request, directing delivery of the experts' reports by the end of the following week and, appellants were granted additional time, only with the court's permission. The request for continuance was later denied.

Applying the reasoning of the Court of Appeals in *Manor Inn*, that the theft of a vehicle with the keys left in the ignition was foreseeable but that the thief would subsequently have an accident was not, the circuit court opined that it was inconceivable that Ryland and Summit could foresee, nine years before the fire occurred, that the Lis would finish off the basement without providing emergency egress in violation of building

codes and that the Chapman parents would allow the boys to keep candles lit while they were sleeping. Assigning particular importance to the fact that there were nine years between the acts complained of and the injury that occurred, the court concluded that "we have two [ ] negligent intervening acts— two dozen persons, occurring over two periods of time, that conspired together to bring about and/or to cause this injury." The court, therefore, ruled that the allegations of negligence of Summit and Ryland, as set out in the Complaint, did not establish legal cause.

On March 29, 2006, the Lis filed their motion to dismiss, in which they pointed out that the circuit court had previously "ruled in favor of the codefendants' motion to dismiss or motion for summary judgment on the grounds that there was an absence of foreseeability and/or proximate cause concerning the injuries and damages alleged by the [appellants]." On April 7, 2006, however, they withdrew their request for a hearing on their Motion to Dismiss and, on April 20, 2006, the court issued its order, stating only "that the Motion to Dismiss filed by Defendants, Gui–Fu Li and Chung Ling Li, be and is hereby GRANTED."

Because the Lis withdrew their request for a hearing on their motion to dismiss and the court accordingly issued its order without an oral or memorandum opinion, we can only look to the arguments set forth in the motion filed by the Lis as the bases for the court's ruling. The Lis, in Section II of their Motion to Dismiss, captioned "LEGAL ARGUMENT," explain that they incorporated by reference "the case law" submitted to the trial court manufacture defendants regarding applicable legal standards and standards applicable to a determination of proximate cause. In their motion, the Lis contended that Keith's parents, Michael Chapman and Carolyn Hill Chapman, knew that the children were in the basement area, which was being illuminated by candles; that they were without adult supervision; that Keith Chapman allowed a candle to remain burning in the family room of the basement when he went to sleep, contrary to his parents' instructions;

that the foregoing constituted intervening acts operating as a superseding cause of the ultimate harm and that, ultimately, the negligence of the Chapmans was active, while any negligence on their part was passive. In the absence of a separate hearing in which the court articulated the basis for its decision to grant the Lis' motion to dismiss, our review will proceed on the basis that the court did, indeed, apply the same rationale that had been employed in the disposition of the co-defendants' motions to dismiss.

On November 9, 2000, the circuit court entered an order denying appellants' Motion for Summary Judgment and granting that of appellees Dieffenbach and Hightower. The court reasoned that Dieffenbach and Hightower, "as home-improvement contractors repairing water damage to the basement of the residence in 1994, did not have a legally cognizable duty on which to impose liability for damages and injuries sustained in [the] June 1998 fire, to warn the occupants that the basement rooms should not be used for sleeping." The court further concluded that the failure to obtain building or electrical permits from the City of Gaithersburg in 1994 prior to repairing water damage to the basement was neither a cause in fact nor a legal cause of the fire. The court further found speculative the causal connection advocated by appellants, *i.e.*, that, had Dieffenbach and Hightower pulled the required permits, inspectors for the City of Gaithersburg would have discovered that rooms in the basement were being improperly used as bedrooms, particularly in light of the fact that the City of Gaithersburg inspected the property on one or more occasions following repairs made to the basement in 1994 and failed to inform the owners or occupants that the basement rooms could not be used for sleeping. Finally, the smoke detectors in the residence were in working order before and after the basement repair work performed in 1994, at a time when the Gaithersburg Building code did not require dual power smoke/fire detectors to be installed in connection with repair projects.

## PROCEDURAL OVERVIEW

### A

### ISSUES GENERATED IN THIS APPEAL

As a preliminary matter, we deem it critical to define the parameters of the issues properly before us on this appeal. The Re–Filed Omnibus Amended Complaint alleges that the manufacturer defendants breached their "duty to design, manufacture, assemble, smoke/fire detector at issue, which was not in an unreasonably dangerous condition" because it was not "equipped with a technologically and economically feasible safety device, a battery back-up ... in the event of an electrical outage or short." The Re–Filed Omnibus Amended Complaint also alleges that the appellee manufacturers failed to warn that their product would not operate during a power outage and that they failed to provide a product free from design and/or manufacturing defects, thereby breaching express and implied warranties for merchantability and fitness for a particular purpose.

In addition to the allegations of negligence, the Re–Filed Omnibus Amended Complaint alleges breaches based on strict liability against the manufacturer defendants, Ryland and Summit for distributing a product defective in design at the time it left appellees' control and, further, that appellees failed to warn foreseeable users of the smoke detector's limitations. Appellants point out in their brief that the strict liability causes of action against the manufacturer defendants, the Ryland Group and Summit Homes, alleged in Counts III through VII, IX and XIII, respectively, for the purposes of appellants' Motion to Dismiss, challenged only with respect to causation. Having argued that their position on the motion to dismiss was, in essence, to concede that their product was defective, *i.e.*, did not comport with industry standards, the manufacturer defendants reassert, on appeal, their position that "the injuries and fatalities occurred not because of any defect in the design of the smoke alarm, but because the children were sleeping in an illegally enclosed, windowless

basement bedroom which lacked adequate emergency egress facilities."

Likewise, as appellants acknowledge, counsel for Ryland advised the trial judge, "I will accept that for purposes of this motion solely, that we had an obligation in 1989 to install a smoke detector that met standards that were even higher than the ones that our elected representatives had put in place at that time, but that doesn't get to the causation question." Counsel for Summit chimed in, "I would echo the motion by Ryland that, even if it were shown to be the case, there still is not causation pleaded in the complaint by the plaintiffs...."

In light of the concessions by counsel that the smoke detector did not meet industry standards and, for the purposes of the motion to dismiss, were therefore defective, the court, in its rulings, focused only on the issue of causation. Because all parties proceeded on the basis that the smoke/fire detector was defective, that was not at issue.

Appellants, on this appeal, pertinaciously argue issues not considered by the trial judge and cite court decisions in support thereof[2] which do not devolve upon a determination of

---

**2.** None of the following decisions relied upon by appellants turn on the question of whether harm was the result of a superseding cause:

*Butler v. Pittway Corp.*, 770 F.2d 7 (2nd Cir.1985), involved alleged malfunction of two smoke detectors.

In *Carruth v. Pittway Corp.*, 643 So.2d 1340 (Ala.1994), the central issue concerned the legal sufficiency of the warning as to dead airspace. *Id.* at 1346–47.

*Choate v. Champion Home Builders Co.*, 222 F.3d 788 (10th Cir.2000) In products liability action, manufacturer's claim was not expressly or impliedly preempted and grant of summary judgment to the manufacturer reversed of a manufactured home whose hard-wired smoke detectors did not have a battery backup nor a warning as to their inability to detect smoke during power outages. *Id.* at 790. The court held that the claim was not expressly or impliedly preempted and reversed. *Id.* at 797.

*Dillard v. Pittway Corp.*, 719 So.2d 188, 192–93 (Ala.1998) Grant of summary judgment in favor of manufacturer in a wrongful death action based on theory that a smoke detector malfunctioned reversed; because it was foreseeable that a delay in warning by the smoke detector could result in injury to occupants, defendant was not entitled to a "no-

whether the circumstances asserted to be intervening acts are transmuted into superseding causes. They do address the theory espoused, on this appeal, by appellees, the manufacturer defendants, Summit and Ryland, however, that the ultimate harm was caused by the negligent acts of the Lis rather than the failure of the smoke detector to alert the children or by the lack of knowledge that it was not equipped with an alternate power source. Appellants maintain that, because the issue of whether intervening acts of negligence are foreseeable is one of fact, it may not be properly resolved on a motion to dismiss or a motion for summary judgment.

---

causal-relation" defense even if it did not contribute to the defective condition of the smoke detectors.

In *Interstate Eng'g, Inc. v. Burnette*, 474 So.2d 624, 625 (Ala.1985), the court upheld jury finding that, had defective heat detectors not failed to give early warning, victim could have escaped from the house.

In *Laaperi v. Sears, Roebuck & Co., Inc.*, 787 F.2d 726, (1st Cir.1986), the court held that a jury could conclude that Laaperi would have instituted different fire detection methods than a hardwired smoke detector that would not operate in an electrical outage if he had been properly warned. *Id.* at 732–33.

In *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 617 (Iowa 2000), notwithstanding that manufacturer successfully appealed awards of compensatory and punitive damages made pursuant to a jury trial because of the admission of over 360 consumer complaints without verifying that each one was factually similar to the case before the court, the court decided that manufacturer could have reasonably foreseen that the delay in response time to a fire could result in harm and that it should have warned of its limitations.

In *Pac. Employer's Ins. Co. v. Austgen's Elec., Inc.*, 661 N.E.2d 1227, 1230 (Ind.App.1996), following a jury trial, Austgen moved for and was granted manufacturer's motion for judgment following a jury trial based on insufficiency of the evidence; the grant of the motion for judgment was reversed, because claimant was precluded from attempting to prove a nexus between negligent installation of the alarm system and the losses resulting from the criminal act of arson.

In *Pearsall v. Emhart Indus., Inc.*, 599 F.Supp. 207, 211–12 (D.C.Pa. 1984), a jury award was upheld in wrongful death action alleging negligence/product liability based on alleged failure of smoke and heat detectors where there was evidence as to a specific defect and the same defendants were responsible for both the alleged negligent act and defect.

In *Watson v. Sunbeam Corp.*, 816 F.Supp. 384, 389 (D.Md.1993), summary judgment in favor of manufacturer was properly denied because there existed material issues of fact as to the defective design of the electric blanket that started the damaging fire.

The Montgomery County Circuit Court judges, in their series of rulings, based their decision to grant the motions to dismiss exclusively on the theory advanced by the manufacturer defendants, Summit and Ryland that the ultimate harm was caused by intervening acts of negligence which broke the chain of causation between the installation and failure to upgrade smoke detectors which would not function during a power outage and the deaths and the injuries sustained by the Collins, Juster and Chapman boys. The precise issue presented to the court was whether the negligence of the Chapmans, in failing to ensure that the candle was extinguished, and the Lis, in allowing the enclosed basement rooms to be used for bedrooms, among other causes, operated to attenuate the legal responsibility of the manufacturer defendants, Ryland and Summit for the injuries and deaths. Considering how the issue was framed and presented to the court, it properly applied legal principles relative to proximate causation, intervening negligent acts and superseding cause. On appellate review, we, of course, decide only questions which were tried and decided by the lower court. Md. Rule 8–131.

In their briefs, the manufacturer defendants, Ryland and Summit submit that the numerous allegations of negligent acts of others in the Re–Filed Omnibus Amended Complaint "negate" allegations that the failure of advanced warning caused the deaths and injuries.

Employing the applicable principles in a determination of causation, the appropriate response for appellants, on this appeal, is to counter the arguments of the manufacturer defendants, Ryland and Summit that, in the first instance, their failure to install a product that met industry standards and their failure to warn of its limitations was not the legal cause of the deaths and injuries sustained. Even if their negligence could be considered a factor contributing to the deaths and injuries, appellants would nevertheless be obliged to counter appellees' arguments that the acts of negligence, not involving the defective smoke detectors, were of such a nature, applying the well-settled principles in determining causation, that such other negligent acts constitute substantial

factors, rendering the failure to provide advanced warning legally inconsequential. The threshold question, however, is whether the circuit court was sufficiently informed from the allegations in the complaint to engage in this analysis.

Likewise, before reviewing the circuit court's determination that the allegations of the negligent acts of the Chapmans and others could not be foreseen by the manufacturer defendants, Ryland and Summit as to appellants' claims of strict liability, failure to warn and breach of implied warranties for fitness for a particular purpose and merchantability, we must first decide if the circuit court could properly make such a determination based solely on the allegations in the complaint. For the reasons that follow, we shall hold that it could not.

## B

## MOTION TO DISMISS

■ We are tasked, on this appeal, with the review of the circuit court's grant of the Motion to Dismiss the Re–Filed Omnibus Amended Complaint filed by the manufacturer defendants, Ryland, Summit and the Lis.

We observed recently in *Pulte Home Corp. v. Parex, Inc.*, 174 Md.App. 681, 710, 923 A.2d 971 (2007), that "we review *de novo* a trial judge's decision involving a purely legal question." (Quoting *Ehrlich v. Perez*, 394 Md. 691, 708, 908 A.2d 1220 (2006)) (quotations omitted). We reiterated the well settled yardstick as to Motions to dismiss:

"The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven."

*Id.* (quoting *Higginbotham v. Pub. Serv. Comm'n,* 171 Md. App. 254, 264, 909 A.2d 1087 (2006)) (citations omitted).

The circuit court granted the motions to dismiss filed by the manufacturer defendants, Ryland, Summit and the Lis, finding, as a matter of law, that "so many" enumerated "different and substantial intervening acts of negligence" constituted a superseding cause of appellants' injuries. Specifically, relying on *Manor Inn, supra,* it concluded that those intervening acts interrupted the chain of causation, relieving the manufacturing defendants, Summit, Ryland and the Lis of legal liability. In seeking to uphold the circuit court's ruling granting their motion to dismiss, appellees shoulder a formidable burden. Before the circuit court, they elected, in effect, to deposit all of their proverbial eggs in one basket, choosing to assail the sufficiency of the allegations in the complaint, rather than submit depositions, documents and other matters outside of its four corners.

In *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 642 A.2d 219 (1994), the decision upon which the circuit court based its ruling, the motion to dismiss filed by Manor Inn was denied. No mention was made by counsel or the court during the arguments or the decision in the case at hand that the appellee, *Manor Inn,* did not prevail until it obtained a ruling on its motion for summary judgment. That is not to say that, in the proper case, a motion to dismiss would not be the proper vehicle. Appellees have seized upon the verbosity of appellants' twenty-seven count, one hundred and seventy-two paragraph Re–Filed Omnibus Amended Complaint to essentially use the words therein against appellants. Appellees variously point out that the averment in the complaint that the deaths and injuries were caused by the negligence of Defendant A, of necessity, negates causation as to Defendant B. In excruciating detail, appellees cross reference the various negligent acts by the other appellees, positing that each of these intervening acts constitute an intervening cause. In addition to the assertions of negligence of others in the complaint, appellees cite a ruling by Judge Harrington and a deposition by Ryland and Summit.

Our research has failed to uncover prior Maryland decisions or decisions from other jurisdictions in which a court has been called upon to engage in an analysis requiring a determination of whether an intervening negligent act becomes a cause superseding the negligence of defendants responsible for manufacturing, designing and placing in the stream of commerce a device whose specialized—and only—function is to provide advance warning of fires. In addition to the highly extraordinary nature of the intervening acts of negligence, as the circuit court found, the sheer number of acts which, had they not occurred or occurred in a different manner, create endless possibilities as to how the tragedy could have been averted. The combination of events leading up to the fire represents what could best be described as the "perfect storm." Rendering our review more problematic is the circuit court's disposition of the matter on appellees' motions to dismiss. Given that foreseeability is the touchstone in any determination of proximate, intervening and superseding cause, we first address the proprietary of deciding foreseeability on a motion to dismiss.

"Normally, the 'foreseeability inquiry is ... a question of fact to be decided by the trier of fact.'" *Yonce v. SmithKline Beecham Clinical Labs., Inc.,* 111 Md.App. 124, 141, 680 A.2d 569 (1996) (quoting *Balt. Gas & Elec. Co. v. Lane,* 338 Md. 34, 52, 656 A.2d 307 (1995)). And, ordinarily, the question of whether causation is proximate or superseding is a matter to be resolved by the jury. *Wankel v. A & B Contractors, Inc.,* 127 Md.App. 128, 165, 732 A.2d 333 (1999); *May v. Giant Food, Inc.,* 122 Md.App. 364, 383, 712 A.2d 166, *cert. denied,* 351 Md. 286, 718 A.2d 234 (1998).

Appellants refer us to an excerpt from *Lane,* 338 Md. at 53, 656 A.2d 307, in which the Court of Appeals addressed a determination of foreseeability on a motion for summary judgment:

We concluded [in *Manor Inn,* 335 Md. at 149, 642 A.2d 219] that it was reasonably foreseeable that a thief would take a van with keys left in the ignition, but that it was not so clear

"that the thief would drive negligently, and even more unclear that, in doing so, he or she would injure the plaintiff." *Id.* 335 Md. at 160 [642 A.2d 219]. The sequence of events in the present case, however, was more foreseeable. *We think that children moving a spool left in a neighborhood, and another child riding it down a hill and getting injured is more probable than a thief stealing a car, driving negligently and injuring someone.* Accordingly, the matter of foreseeability is one of fact, and not of law, and is not appropriate for resolution by summary judgment in the circumstances of this case.

(Emphasis in brief of appellants).

Immediately preceding the above quotation from *Lane,* however, is the following:

This foreseeability inquiry is ordinarily a question of fact to be decided by the finder of fact. In this regard, we have said: "The true rule is that what is proximate cause of an injury is ordinarily a question for the jury. *It is only when the facts are undisputed, and are susceptible of but one inference, that the question is one of law for the court ...."* *Lashley v. Dawson,* 162 Md. 549, 563 [160 A. 738] (1932). *See also Little [v. Woodall,* 244 Md. 620,] 626[, 224 A.2d 852 (1966) ]; *Texas Company v. Pecora,* 208 Md. 281, 293–94 [118 A.2d 377] (1955); Restatement § 453.

338 Md. at 52–53, 656 A.2d 307 (emphasis added).

The rule, succinctly stated, in *Caroline v. Reicher,* 269 Md. 125, 131, 304 A.2d 831 (1973), is:

We recognize that a determination of whether the intervening act of a third person is a superseding cause which discharges the original actor from liability may be a question for the trier of fact. But, when the evidence presented and the logical inferences deducible therefrom admit of but one conclusion, the question becomes one of law. *Katz v. Holsinger,* [264 Md. 307, 286 A.2d 115 (1972) ]; *Farley v. Yerman,* [231 Md. 444, 190 A.2d 773] (1963). It is true that the facts of a case may place it in the middleground where the issue of the existence of superseding negligence is

properly left for the trier of fact; *but, some cases are such that they gravitate so close to one or the other of the two poles that resolution of the issue becomes one of law.* (Emphasis added). *See also Jubb v. Ford,* 221 Md. 507, 513, 157 A.2d 422 (1960)(holding that "whether [proximate cause] exists is to be decided in a common sense fashion in the light of the attending facts and circumstances, and, unless the facts are undisputed and admit of but one inference, the question is for the jury.").

As noted earlier, *Manor Inn,* the decision upon which the circuit court bases its rulings, was decided on a motion for summary judgment, rather than a motion to dismiss. 335 Md. at 160, 642 A.2d 219.

Following the teachings of *Balt. Gas & Elec. Co. v. Lane, supra* and *Caroline v. Reicher, supra,* we may only affirm the circuit court's determination of foreseeability if we are convinced that the facts of this case are susceptible of but one inference and that they gravitate so close to the polar extreme that the issue of causation is rendered a matter of law. As we shall explain in the discussion which follows, we are not so convinced.

## I

### Negligence

### PROXIMATE CAUSATION

■ As reflected in the circuit court's memorandum opinion, the touchstone of any determination of proximate cause requires that we engage in an analysis to determine foreseeability. Accordingly, our task is to look back from the point in time, when the harm occurred, to the actor's negligent conduct and deduce whether it appears highly extraordinary that such conduct should have brought about harm, severing the link between the act and the harm and whether such conduct is a substantial factor in causing the harm. *Atlantic Mut. Ins. Co. v. Kenney,* 323 Md. 116, 129–30, 591 A.2d 507 (1991); § 435 of the Restatement (Second) of Torts (1965). A discussion of

certain bedrock principles explicating proximate causation is in order.

█ Proximate cause as a component of negligence is established if it is a cause in fact of the injury and a legally cognizable cause. *Yonce*, 111 Md.App. at 137–39, 680 A.2d 569. In determining whether a defendant's negligence is the cause in fact of a plaintiff's injury, the "but for" and the "substantial factor" tests have been applied by Maryland courts. *See Peterson*, 258 Md. at 16, 264 A.2d 851; *Bartholomee v. Casey*, 103 Md.App. 34, 56–57, 651 A.2d 908 (1994), *cert. denied*, 338 Md. 557, 659 A.2d 1293 (1995). Although the "substantial factor" test was devised to address situations in which two independent causes concur to bring about an injury, and either cause, standing alone, would have wrought the identical harm, the "substantial factor" test has been used frequently in other situations. *Yonce*, 111 Md.App. at 138, 680 A.2d 569 (citing Prosser & Keeton on the Law of Torts § 41, at 266 (5th ed.1984), quoted in *Eagle–Picher Indus., Inc. v. Balbos*, 326 Md. 179, 208, 604 A.2d 445 (1992)). The "substantial factor" test is set forth in the Restatement (Second) of Torts (Restatement):

§ 431. What Constitutes Legal Cause

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

§ 433. Considerations Important in Determining Whether Negligent Conduct is Substantial Factor in Producing Harm

The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;

(c) lapse of time.

*See Bartholomee,* 103 Md.App. at 56, 651 A.2d 908 (explicating the "substantial factor" test).

 Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. *Peterson,* 258 Md. at 16, 264 A.2d 851. This determination is subject to considerations of fairness or social policy as well as mere causation. *Id.* Thus, although an injury might not have occurred "but for" an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely "passive and potential, while the negligence of another is the moving and effective cause of the injury." *Id.; Bloom v. Good Humor Ice Cream Co. of Balt.,* 179 Md. 384, 18 A.2d 592 (1941), "or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes." *Dersookian v. Helmick,* 256 Md. 627, 634, 261 A.2d 472 (1970); *see Liberto v. Holfeldt,* 221 Md. 62, 66, 155 A.2d 698 (1959). If there is no causation in fact, we need go no further for our inquiry has reached a terminal point. If, on the other hand, there is causation in fact, our inquiry continues. *Mackin & Assocs. v. Harris,* 342 Md. 1, 8, 672 A.2d 1110 (1996). If causation in fact exists, a defendant will not be relieved from liability for an injury if, at the time of the defendant's negligent act, the defendant should have foreseen the "general field of danger," not necessarily the specific kind of harm to which the injured party would be subjected as a result of the defendant's negligence. *Stone v. Chicago Title Ins. Co.,* 330

Md. 329, 337, 624 A.2d 496 (1993); *Yonce,* 111 Md.App. at 137–39, 680 A.2d 569.

As noted, the circuit court relied almost exclusively on the decision of the Court of Appeals in *Manor Inn,* 335 Md. at 157, 642 A.2d 219. The question under consideration was: "When more than one act of negligence arguably could be responsible for the injury, the question that is presented is whether the second in point of time superseded the first, *i.e.,* did that act intervene and supersede the original act of negligence, thus terminating its role in the causation chain?" Proceeding on the premise that Manor Inn's employee was negligent in leaving keys in the unattended van and that the thief was negligent in the manner in which he drove the van after stealing it, the Court ultimately concluded that the thief's negligent driving of the van broke the chain of causation flowing from Manor Inn's negligence. Noting that it had stressed the importance of foreseeability in a proximate cause analysis in *Kenney,* 323 Md. at 129–30, 591 A.2d 507, the Court then reviewed principles applicable to intervening, superseding cause, noting the importance of foreseeability in determining the existence of proximate cause, citing Sections 435 [3] and 447 [4] of the Restatement (Second) of Torts.

---

**3.** Section 435 of the Restatement provides:

*Foreseeability of Harm or Manner of its Occurrence*
(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.
(2) The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.

**4.** Section 447 of the Restatement provides:

*Negligence of Intervening Acts*
The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
(a) the actor at the time of his negligent conduct should have realized that the third person might so act, or

Former Chief Judge Wilner, writing for this Court, in *Valentine v. On Target, Inc.*, 112 Md.App. at 691–92, 686 A.2d 636, iterated:

> The current state of the Maryland law of proximate cause, as it would apply in this setting, is, at least facially, somewhat ambiguous. The problem arises when the direct and immediate cause of the ultimate injury is not the negligence of the defendant but intervening conduct that the defendant's negligence allowed or made more likely to occur. The question then is raised whether the intervening event suffices, in law, to break any chain of causation between the injury and the negligent conduct which permitted the intervening event to occur. The answer, in a nutshell, is that the chain is not broken if the intervening event set in motion by the negligent conduct was foreseeable.

(Internal citations omitted).

The *Valentine* Court then reiterated the test in assigning culpability as between actors whose negligence is not concurrent enunciated in *State v. Hecht Company*, 165 Md. 415, 422, 169 A. 311 (1933), which we discuss more fully, *infra*.

## A

## MANUFACTURER DEFENDANTS

 On June 24, 2005, as noted, *supra*, the court rejected appellants' primary argument and found that the concept of superseding cause does apply in product liability cases and thereby granted the manufacturer defendants' Motion to Dismiss as to Counts III, IV, V, VI and VII. As we have noted, *supra*, the court, in response to the manner in which the issues had been framed by the parties, properly applied the

---

(b) a reasonable person knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

well-settled legal principles in an analysis of proximate causation, intervening negligent acts and superseding cause as explicated in *Manor Inn* and other authorities cited herein.

The court began its ruling by setting forth the six factors enumerated in the *Restatement (Second)*, § 442(2) that are determinative of "whether or not in a given instance an intervening act operates as [a] superseding cause," along with identifying two other relevant factors, *i.e.*, the lapse of time and whether the intervening act involves criminal conduct as opposed to negligence.

The court then recounted a sequential timeline over the nine-year period prior to the fire, essentially summarizing appellants' allegations as set forth in the Re–Filed Omnibus Amended Complaint. Considering the six *Restatement* factors and the two additional relevant factors and, based upon a review of the Complaint, the court reasoned that the intervening acts of other negligent parties broke the chain of causation and became superseding causes absolving appellees of liability. The opinion concludes, "As a matter of law, it was not foreseeable when the smoke detectors were manufactured in 1989 that so many different and substantial intervening acts of negligence, including violations of law, would occur so as to link the manufacturer defendants alleged negligent act to the Plaintiff's injuries nine years later."

The trial court initially stressed the lapse of time and the other factors that intervened between the original alleged negligent act, *i.e.*, failing to provide an alternative power source, and the ultimate harm. The court concluded that those other factors constituted "substantial factors" as delineated in Restatement (Second), §§ 431 (providing that legal cause results when conduct is a substantial factor in bringing about the harm) and 432 (providing that negligent conduct is not a substantial factor if the harm would have been sustained in the absence of the original negligence).

The circuit court, basing its ruling on the holding in *Manor Inn*, focused its inquiry on whether the negligence of the Chapmans and the Lis was set in motion by the manufacturer

defendants' failure to equip their product with an alternative power source and, if so, whether the harm was therefore foreseeable.

The *Manor Inn* Court, in its analysis of the facts, explained: Leaving the keys in the ignition of a motor vehicle increases significantly the chances of that vehicle being stolen. Thus, viewing the total facts of the case *sub judice*, it is patent that it was reasonably foreseeable that, by leaving the keys in the ignition, a thief would take the van. In the case *sub judice*, but for the negligence of Manor Inn, Griffin would not have taken the van. It is not so clear, however, that the thief would drive negligently, and even more unclear that, in doing so, he or she would injure the plaintiff. Consequently, while the negligence of Manor Inn clearly was the proximate cause of the theft of the van, it does not follow that that causal relationship continued from the moment of the theft to the moment of the impact between the van and Wewer's car. Griffin's conduct in taking the van was not "highly extraordinary"; indeed, it was highly predictable. On the other hand, the manner in which he drove the van, and its consequences, were "highly extraordinary."

*Id.* at 160, 642 A.2d 219.

The circuit court, applying *Manor Inn*, essentially adopted the *Manor Inn* Court's reasoning that, as it might not be foreseeable that a thief would drive a stolen car negligently causing injury to another, while the theft of a car left unattended with the key in the ignition is foreseeable, the use of candles, while ill-advised, might be anticipated, but the inexplicably reckless manner in using the candles is no more foreseeable than the negligent driving of the thief. The grist of the circuit court's legal analysis in the case at hand is contained in the following excerpt:

In addition to those factors [Restatement (Second), § 442(a)—(f) ], a review of the cited cases demonstrates that the courts consider at least two additional factors to be relevant in determining whether intervening acts give rise to a superseding cause. They are (1) the lapse of time

between the act complained of and the injury, and (2) whether the intervening act rises to the level of criminal conduct as opposed to negligence.

Here a consideration of all of those factors leads the court to conclude, based upon review of the Complaint, that the numerous acts of the remaining [appellees] constitute a superseding cause of the [appellants'] harm relieving the "Manufacturer Defendants" of liability.

\* \* \*

The [appellants] in their Supplemental Opposition filed March 30, 2005 describe the test of whether these intervening acts rise to the level of superseding cause as follows: "[T]he problem arises when the direct and immediate cause of the ultimate injury is not the negligence of the Defendant, but the intervening conduct that the Defendant's negligence allowed or made more likely to occur. The question is raised whether the intervening event suffices, in law, to break the chain of causation between the injury and the negligent conduct which permitted the intervening act to occur. The answer, in a nutshell, is that the chain is not broken, if the intervening event set in motion by the negligent conduct was foreseeable. *Valentine v. On Target, Inc.*, 112 Md.App. 679, 691–[9]2[, 686 A.2d 636] (1996) (emphasis added). While the resulting harm is one of the factors to be considered, the focus of the inquiry is primarily on the nature of the intervening acts.

This analysis was a proper adjudication of the issues as framed by the parties, assuming that the analysis was of facts susceptible of but one inference. We hold that it was not.

Appellants contend that the court erred because the chain of causation is not broken when negligent acts alleged to have intervened were foreseeable and it is within the purview of the jury to make the determination of foreseeability. They further argue that the negligent acts and omissions of the manufacturer defendants created a dangerous situation, where it was foreseeable that the negligent acts of another would

cause damage to occur. The negligence alleged by appellants is that appellee manufacturers, through their design, manufacture, assembly, testing, labeling, distributing, marketing, and selling of the smoke detector at issue placed into the flow of commerce a product that was defective by reason of the lack of an alternative power source and that they failed to warn or adequately advise users of the smoke/fire detector of any deficiencies.

Before addressing the issue upon which we believe this appeal devolves, we note that appellants acknowledge that dual power smoke detectors were not required when Grantchester Place was built in 1989.[5] They allude to the feasibility and availability of dual power smoke detectors which, they say, represented the standard of care in the industry at the time of manufacture and the time of fire in question.[6] Although the premise of appellants' negligence claim is that the lack of a battery back-up system or alternative power source constitutes a defect, counsel for the manufacturer defendants made clear in the circuit court and have reasserted their position on appeal that they did not—and do not—contest whether their product was defective.[7] Thus, as we have noted, for purposes of the motion to dismiss, the issue of whether the smoke detector was defective (except insofar as any such defect factored into the causation analysis) was not before the court, nor did the court consider it. It is undisputed that the manufacturer defendants delivered the User's Manual to Summit and/or Ryland, alerting the ultimate purchaser, when it

---

5. The dual powered smoke detectors became mandatory on July 1, 1990, pursuant to Md.Code Ann., Article 38A, § 12A (p).

6. This is apparently a veiled allusion to the concept of best product available.

7. Counsel advised the Court: "Nevertheless, for purposes of their [manufacturer defendants'] motion below, they focused on legal causation rather than causation-in-fact. Manufacturer defendants believe and assert that the injuries and fatalities occurred not because of any defect in the design of the smoke alarm, but because the children were sleeping in an illegally enclosed, windowless basement bedroom which lacked adequate emergency egress facilities."

was installed, that the smoke detector would not operate during the power outage. The delivery of the User's Manual undermines the claim that the appellee manufacturers failed to warn the ultimate consumer of the smoke detector's limitations.

Appellants further argue that, failing to mount the warning/User Manual "on the outside of the product" constitutes breach of a duty to warn. We are aware of no authority to support this contention. As noted, the court's decision rested exclusively on the issue of causation. Although, arguably, the circuit court could determine from the allegations in the complaint that the manufacturer defendants, by delivery of the User's Manual, had satisfied their duty to warn, as discussed, *infra*, we are persuaded that a determination that subsequent negligent acts relieved them of the legal responsibility to manufacture and place into the stream of commerce a product which did not meet industry standards required a record more fully developed in a motion for summary judgment or a trial on the merits.

Additionally, as to Ryland and Summit, we believe that the circumstances surrounding the failure to deliver the User's Manual to the Lis could not be discerned from the allegations in the complaint and, therefore, could only be fleshed out by evidence and/or information developed outside of the complaint. Indeed, although the fact of the warning can be discerned from the complaint, resort to examination of the actual User's Manual is required to determine the explicitness of the language therein.

We are satisfied that the circuit court engaged in the proper analysis, employing the applicable legal principles in a determination of what constitutes a superseding cause. Because we are not convinced that the facts of this case are susceptible of but one inference, however, we hold that the circuit court erred in not first determining whether there existed material facts not discernible from the Re–Filed Omnibus Amended Complaint. In other words, the court's analysis, although

proper as to the facts it had available to it, was premature. We explain.

The Re–Filed Omnibus Amended Complaint, as the manufacturer defendants point out, alleges that Ryland and Summit failed to warn customers of the lack of a battery back-up or alternative power source and, thus, potential hazards associated with the use of said model detector. The result was that the plaintiff children did not have a reasonable opportunity to escape because of the acts, omissions and breaches of Ryland and Summit. "According to the very facts alleged in the Complaint," insist the manufacturer defendants, the warnings were sufficient to prevent the injuries and fatalities and would have done so but for the unforeseen event that the instructional materials were not provided to the occupants of the house. Finally, they postulate, "These allegations alone negate proximate causation as to the manufacturer defendants ..."

The manufacturer defendants list as other intervening causes set forth in the Complaint (1) the failure of the Lis to obtain building permits, (2) the failure of the City of Gaithersburg to conduct inspections in 1995 and 1998 during which the City would have discovered the windowless basement rooms, (3) the failure of the Chapmans to properly supervise the children's use of candles, (4) and, of course, the negligence of Keith Chapman in failing to extinguish the candle before going to sleep.

Although the manufacturer defendants fault the Lis, the City of Gaithersburg, Keith Chapman and his parents, much of the blame for what happened is attributed to the use of the enclosed rooms in violation of building codes. Second only to the blameworthiness attributed to the Chapmans, appellants and the other appellees argue that the actions and omissions of the Lis in allowing the use of the enclosed rooms caused the serious and fatal injuries. As will be discussed more fully, *infra*, depositions submitted depicting what transpired during the moments after the five boys awakened to a basement ablaze indicate that there was a substantial period of time during which they attempted to escape from the fire. The

theory advanced by the manufacturer defendants, Ryland and Summit is that, given the amount of time during which the boys attempted to escape, they had sufficient advanced warning of the impending peril but, due to lack of emergency egress, they remained trapped in the burning rooms. Thus, it was not the lack of an advance warning which caused the deaths; rather, it was the negligent acts of the defendants who created the unsafe condition.

It is clear that, for at least several minutes, the boys tried unsuccessfully to escape; Brandon Chapman's deposition indicated that he could not open the French doors which led to the upstairs of the home because the locks (handles) on the doors were too hot to grasp and his attempt to kick in the glass to the French doors was unsuccessful. Subject to further exploration on a motion for summary judgment or at a trial on the merits is the material issue of whether, had a dual powered smoke detector provided an earlier warning, Brandon or one of the other boys could have reached the French doors before the handles/locks had become too hot to open the doors. Provided with the precise timing as to when the boys were first alerted and the duration of their entrapment, the motions judge, on motion for summary judgment, or the court, on the merits, looking back from the harm to when the hardwired detectors were distributed, could determine if it would appear highly extraordinary that the conduct of manufacturer defendants, Ryland or Summit would have brought about the injuries and deaths. *Manor Inn*, 335 Md. at 160, 642 A.2d 219 (citing *Kenney*, 323 Md. at 131, 591 A.2d 507).

Even if the circuit court, on a motion for summary judgment, or the fact finder, at a trial on the merits, determined that a dual-powered smoke detector would have alerted the boys in time to open the doors before they became too hot, it would nevertheless, as it did, be required to proceed to consider "so many different and substantial intervening acts of negligence," the nature of the intervening acts and the nine-year interval between installation of the smoke detector and

the fire. The court would also be required to apply, as it did, the factors under *Restatement (Second)*, § 442(a)-(f),[8] *Manor Inn, Yonce v. SmithKline, supra* and *Valentine v. On Target, Inc.*, 112 Md.App. 679, 691–92, 686 A.2d 636 (1996). Particularly relevant to the facts in this case, properly addressed on a motion for summary judgment or at a trial on the merits, is *Restatement (Second)* § 435(2).[9] Comment (a) to § 435 cross references *Restatement (Second)* § 433(a) which, as the trial judge found, provides that the number of other factors that contribute in producing the harm and the extent of the effect which they have in producing it, are considerations in determining whether the original negligence is a substantial factor.

---

**8.** The Court, in identifying the six factors, said:

Section 442(2) of the Restatement Second of Torts [sic] identifies six factors that are important in determining whether or not in a given instance an intervening act operates as superseding cause. Those factors are:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

In addition to those factors, a review of the cited cases demonstrates that the courts consider at least two additional factors to be relevant in determining whether intervening acts give rise to a superseding cause. They are (1) the lapse of time between the act complained of and the injury, and (2) whether the intervening act rises to the level of criminal conduct as opposed to negligence.

**9.** Comment (a) to *Restatement (Second)* § 435(2), observes: "However, the manner in which the harm occurs may involve the cooperation of other assisting factors so numerous, and so important that the actor's negligence cannot be regarded as a substantial factor in bringing about the harm."

Furthermore, the facts *sub judice* render § 433(a) *apropos.* That section states that conduct that has created a force or series of forces that are in continuous and active operation up to the time of harm constitutes a substantial factor. Obviously, although the effect of any negligence by the manufacturer defendants, Ryland and Summit may be viewed as continuous, it would not be viewed as both continuous and active as in the case of the Lis. And, on a motion for summary judgment or a trial on the merits, although the Chapmans' negligence centered around a single episode, the extent of the effect that failing to extinguish the candle had on producing the harm was indeed extraordinary *and,* thus, should be considered as a possible superseding cause, breaking the chain of causation between the negligence of the manufacturer defendants, Ryland and Summit and the ultimate harm. *Restatement (Second)* § 433(a).

■■■ Finally, a proper intervening negligent act/superseding cause analysis contemplates contrasting the nature of the original act and the negligence asserted to have, in terms of legal cause, superseded the original act of negligence. The specific actions surrounding the failure to extinguish the candle should be subjected to scrutiny beyond the bare allegations contained in the complaint to determine whether allowing the candle to burn constituted an extraordinarily negligent act. For instance, Keith Chapman apparently had extinguished the candles, then re-lit the candle which caused the fire after Samuel Juster indicated that he was afraid of the dark.

From the foregoing, the Montgomery County Circuit Court judges, in their rulings on the motions to dismiss, responded appropriately to the specific issues presented to them, but they, unfortunately, failed to consider whether these issues should be resolved upon a review of appellants' allegations in the complaint, rather than a more expansive review upon motions for summary judgment or proceedings on the merits. We do not reach the question of whether the issue of foreseeability of the manufacturer defendants, Ryland and Summit is

more properly determined on a motion for summary judgment, as in *Manor Inn*, or whether, as appellants contend, foreseeability can only be resolved by a jury or fact finder on the merits. We hold that the facts determinative of whether the negligent acts of the manufacturer defendants, Ryland and Summit are substantial factors in causing the deaths and injuries and, hence, that such injuries and deaths were foreseeable are susceptible of more than one inference. *Caroline v. Reicher*, 269 Md. at 131, 304 A.2d 831. These facts are not so close to the polar extreme that the issue of causation is rendered a matter of law. *Id.* Accordingly, we reverse the grant of the motions to dismiss of the manufacturer defendants and remand Counts III through VII for further consideration.

## B

### RYLAND HOMES AND SUMMIT ELECTRIC

■ The circuit court, at the outset of the proceedings on January 3, 2002, addressed counsel for Ryland and Summit: "Then we have before us Ryland's motion to dismiss/summary judgment, I guess. . . . Summit Electrics' [sic] motion to dismiss/summary judgment as they view it, and then I know there are motions relating to experts, time permitting." Counsel for Ryland responded, "It is not, as they say, a motion for summary judgment. My motion doesn't cite anything outside of the record in this case. I don't attach any deposition experts or other kinds of exhibits. I cite only the well-pleaded, factual allegations of their complaint and one prior ruling by the court, Judge Harrington's ruling, entering summary judgment in favor of Dieffenbach and Hightower. . . ." Similarly, at oral argument before the circuit court, counsel for Ryland stated that "[i]t is not . . . a motion for summary judgment," and further explained that "[t]he only thing that matters is what they have said in the well-pled factual allegations of their Complaint."

Counsel for Ryland also stated as follows:

They allege and we will accept for purposes of this motion, their conclusion that Ryland breached, for want of a better concept, the applicable standard of care. I will accept that for purposes of this motion, solely, that we had an obligation in 1989 to install a smoke detector that met standards that were even higher than the ones that our elected representatives had put in place at that time, but that doesn't get to the causation question. We will assume that we were negligent or that we installed a defective product.

Ryland's counsel also conceded, for purposes of the pending motion to dismiss, that appellants had validly stated a products liability claim on all essential elements, except for causation.

Counsel for Summit proceeded in similar fashion. Summit styled its pleading as a "Motion to Dismiss or in the Alternative, Motion for Summary Judgment." Summit's counsel and the circuit court treated the motion as a motion to dismiss at oral argument, stating, "I would echo the motion by Ryland that, even if it were shown to be the case, there still is not causation pleaded in the complaint by the plaintiffs . . . ." Like Ryland's counsel, Summit's counsel stated, "My motion is also a motion to dismiss, that the [appellants'] complaint fails to state a cause of action upon which relief can be granted against my client."

Appellees Ryland and Summit focus their argument on the alleged negligent acts of the homeowners, the Lis. The Re–Filed Omnibus Amended Complaint alleges, they recount, that, when the Lis purchased the house, the basement was "an empty concrete shell without even electrical outlets," and that "[s]hortly after purchasing the house, however, the Lis had their basement finished so that they could use it for a medical office," in violation of City of Gaithersburg Building codes requiring emergency egress. Appellants' Re–Filed Omnibus Amended Complaint continues, averring that, when the Lis had the basement repaired after a broken pipe caused extensive water damage in 1994, the Lis, Dieffenbach and Hightower were required to obtain a building permit, but did not and,

had they applied for a permit, "they would have had to submit a floor plan indicating the intended uses of the enclosed rooms in the basement," thereby alerting "[t]he City of Gaithersburg [who] would have informed [them]" that the enclosed basement rooms "could not be used as sleeping areas" because of "the lack of emergency egress windows."

The complaint further alleged that the Lis' failure to install dual-powered smoke detectors, in violation of the Gaithersburg Building Code, which "required" that a property owner "install smoke/fire detectors when alterations, repairs, or additions requiring a permit occur[red] or when one or more sleeping rooms [were] added or created in existing dwellings" was "illegal[ ]" conduct which proximately caused appellants' injuries.

According to Ryland and Summit, the cause of the failure to have an operable smoke detector was the negligence of the Lis and their contractors, Dieffenbach and Hightower, in not removing or replacing the original smoke detector even though they said that it may have suffered latent damage from the water that seeped through the basement ceiling during the 1994 flood. And, finally, the Lis, Ryland and Summit cite the assertion in the complaint that "the Lis themselves . . . made [a] material representation that the enclosed basement rooms could be used as sleeping areas . . . especially when it is presumed that the Lis as landlords knew the applicable codes pertaining to habitability of the leased premises."

Ryland and Summit then relate the allegations which they say represent the superseding causes attributable to the Chapmans. Initially, Ryland and Summit posit that the mere fact of allowing the children and their friends to sleep in windowless bedrooms, which lacked adequate means of egress, constituted an intervening negligent act. Further, acts of negligence attributable to the Chapmans, according to Ryland and Summit, are: the fact that Michael Chapman lived in the house for seven years without once attempting to change the battery in the subject smoke detector, but failed to realize that there was no battery backup and, consequently, that it would

not work during a power outage, and that Michael and Catherine Chapman would allow their children and their children's friends to use candles for illumination while sleeping in a windowless basement bedroom which lacked a means of egress.

Thereafter, counsel presented arguments on the appellants' motion to dismiss and the court, applying the holding in *Manor Inn, supra,* issued its ruling:

I just cannot see how that, accepting as I do, that Ryland and Summit installed defective smoke detectors—that is, detectors that did not meet the standard that the industry required at the time that the house was constructed, approximately nine years before the fire occurred—how it was foreseeable then that the owner of the house would finish off an unfinished concrete basement and, at the time he would finish it off or she would finish it off, that they would not then install smoke detectors that would meet whatever code and/or industry required [sic]; that in addition thereto, that the owner of the house would finish off the basement without conforming to the requirements of the then existing codes and/or then existing industry standards; that in addition thereto, that at some point later in time, that the parents of children would permit children—sorry—that the owners would not only finish off the basement but they would finish off the basement by installing bedrooms in rooms that had no egress other than—that is, by way of windows directly to the outside from the bedroom—that in addition thereto, that it would be foreseeable that at some point in those nine years, that tenants of the premises would permit children or other occupants of the premises to sleep in those rooms and, during a power outage, would permit the occupants to, while sleeping in the rooms where there was no egress directly to the outside, light candles and keep candles lit while they were sleeping.

Summit, the party who procured the smoke detectors, and Ryland, the builder that engaged Summit to install the smoke detectors, were variously alleged to be liable for the immolation of the children on the theories of negligence, strict

liability, failure to warn and wrongful death. Notwithstanding that Summit and Ryland were emphatic in articulating their unequivocal reliance on the allegations contained in the Re-Filed Omnibus Amended Complaint to refute the element of causation, appellants maintain that, according to the affidavit of their electrical contractor expert, they failed to adhere to the standard of care for electricians in 1989. Further, contend appellants, the fact that Ryland and Summit comported with the applicable building codes does not prevent a finding of negligence where a reasonable man would take additional precautions.

As noted, the singular issue before us is whether the circuit court erred in ruling that, assuming the facts as alleged to be true, they admit of but one inference, *i.e.,* that the negligent acts of others superseded any negligence on the part of Ryland and Summit, thereby rendering such other acts as the legal cause of the deaths and injuries at issue. We focus, therefore, only on the four corners of the complaint, without consideration of affidavits submitted. If, upon our review, we focus only on the allegations in the complaint, as Ryland and Summit urge, the affidavit of appellants' electrical contractor offered as an expert to establish that Ryland and Summit failed to adhere to the standard of care for electricians in 1989 would not be properly before the Court.

In addition to the allegation that Ryland and Summit failed to adhere to the standard of care for electrical contractors is the assertion that, as a result of their failure to deliver the instructions and warnings of the smoke detector's limitations, the Chapmans were prevented from learning that the device would not alert to the outbreak of a fire in the event of a power outage.

Invoking the substantial factor test, Summit references, *inter alia,* the decision of the Court of Appeals in *Manor Inn.* Summit claims that, in arguing that the AC power smoke detector was the cause of the injury, appellants have ignored all other variables, including the Chapmans' decision to allow children to use candles in the basement until 4:30 a.m., the

decision to leave the candle burning while they slept, another defendant's remodeling the basement for use as a living area with no means of egress, in violation of the city code, and the fact that the violations were not discovered despite several home inspections.

As we have concluded in the preceding section, any analysis, applying the recognized principles in a determination of superseding cause, requires a juxtaposition of the acts of negligence committed by Ryland and Summit, in failing to deliver the instructions and warning to the homeowners, the Lis, as opposed to the negligence of others, particularly the Lis and the Chapmans, based on facts that admit of but one inference. As noted, not only must the facts, as they relate to Ryland, admit of but one inference, but the same must be true of the acts of negligence asserted to be causes which supersede that negligence of Ryland and Summit. The same consideration that we apply to the manufacturer defendants, regarding the significance of information that cannot be discerned from the complaint, is equally applicable to Ryland and Summit.

In other words, whether the actions of Keith Chapman and his parents are highly extraordinary must be viewed in relation to the role played by Ryland and Summit in placing into the stream of commerce a product which fails to comport with industry standards and their failure to deliver the User's Manual to the Lis, resulting ultimately in lack of knowledge by the Chapmans that the smoke detector would not function during a power outage. Of course, Ryland and Summit point out that the Chapmans lived in Grantchester Place for nine years, during which they would have discovered that the smoke detector did not have a battery backup system if they had simply attempted to change the batteries during that nine-year period. The issue raised by the allegation that the negligence of Ryland and Summit in failing to deliver the User's Manual and the rejoinder that the limitations of the smoke detector should certainly have been discovered over the nine-year period could not properly have been determined as a matter of law.

It may well be that, as a result of an analysis of the facts as they are determined to be on a motion for summary judgment or at a trial on the merits, Ryland and Summit would prevail in establishing that their role in selecting, purchasing and installing a smoke detector which did not comport with industry-standards, and in failing to deliver a document that contained warnings of its limitations, was superseded by the negligence of the Lis and Chapmans. The issue, however, of whether acts of the Lis and Chapmans constituted a superseding cause could not be properly adjudicated without an examination of the contents of the User's Manual, a consideration of whether, in light of the Chapmans' failure to attempt to change the batteries, the failure to deliver the manual was of any consequence and a determination as to whether procuring and installing a product which did not meet industry standards is a substantial factor, particularly considering that it was compliant with all applicable building codes when it was installed. As in the case of the manufacture defendants, we reverse the grant of the motion to dismiss of Ryland and Summit and remand Counts XIII through XV of the Re–Filed Omnibus Amended Complaint for further consideration.

## C

### THE LIS

Appellants next claim that the court erred as a matter of law by granting the Motion to Dismiss appellants' claims filed by appellees Gui–Fu Li and Chung Ling Li pursuant to Maryland Rule 2–322 on the grounds that the Re–Filed Omnibus Amended Complaint failed to include a well-pled allegation of proximate cause with regard to the injuries sustained in the house fire.

As we have recounted, *supra*, the Re–Filed Omnibus Amended Complaint alleges that the Lis, having been notified that they could not use their refinished basement as a medical office because of zoning restrictions, knew or should have known of the legal requirement to obtain a building permit in 1989 when they refinished the basement. It is further alleged

that the Lis should have applied for a building permit in 1994 when they engaged Dieffenbach and Hightower to perform repairs caused by water damage from a broken pipe. Had they attempted to obtain the proper building permits, appellants aver, the City of Gaithersburg would have notified them that the rooms could not be used as sleeping areas because of the lack of emergency egress. As a result of the City's notification, the basement would have remained a concrete shell without electrical outlets and, thus, the basement would not have been used by the children as a sleeping area when the fire broke out on June 14, 1998.

Also alleged is that the Lis themselves and/or their agents made material representations that the enclosed basement rooms could be used as sleeping areas and that the Lis knew and condoned such use by the Chapmans. The conclusion asserted, from the foregoing, is that the Lis' negligent and unlawful acts resulted in creating a deathtrap in the basement and were substantial factors in causing the injuries sustained.

On January 16, 2003, the circuit court (Rupp., J.) granted the Lis' Joint Motion to Dismiss as to appellants Collins and Juster. In response to the counts left standing, the Lis argue that, as the last remaining defendants in the case, they should be dismissed because there was an "absence of foreseeability and/or proximate cause concerning the injuries and damages alleged by the [appellants]." They withdrew their request for a hearing on their Motion to Dismiss on April 7, 2006 and the trial court (Mason, J.) issued its order on April 20, 2006, stating "that the Motion to Dismiss filed by Defendants, Gui–Fu Li and Chung Ling Li, be and is hereby GRANTED."

Because the Lis withdrew their request for hearing on their Motion to Dismiss and the court, accordingly, issued its order without an oral or memorandum opinion, we do not have the benefit of the court's rationale in granting the motion. The only basis advanced by the Lis, as stated in their legal argument as part of their Motion to Dismiss was that, they "hereby adopt and incorporate the case law that was sited [sic] by the Court in the Opinion and Order that granted the

'Manufacturer Defendants' [sic] [sic] . . . with regard to section III, Applicable Legal Standards, and section IV, Standards Applicable to a Determination of Proximate Cause."

On this appeal, the legal theory of the manufacturer defendants, Ryland and Summit, simply put, is that the negligent acts of Michael, Catherine and Keith Chapman, in not ensuring that the candle was extinguished before the boys went to sleep and the negligence of the Lis are the superseding causes of the injuries to the Chapman boys and the deaths of Stephon Collins and Samuel Juster. The Lis, figuratively, having drawn fire from the other defendants, not surprisingly, faced with the onslaught of allegations that it was their negligence in creating a potential for a cauldron that proximately caused the injuries and deaths, take aim at the Chapmans.

Mindful that, for purposes of the motion to dismiss, the Lis, like the other defendants, must reference the allegations in the Re–Filed Omnibus Amended Complaint that they contend negate that their negligence was the proximate cause of the deaths and injuries, they assert:

Upon review of the Re–Filed Omnibus Amended Complaint, there is no allegation that the Lis were present when the subject fire occurred or that they had anything to do with the decision to use candles for lighting in the basement of the residence. . . . As referenced in the Opinion and Order that was issued by the Court in granting the "Manufacturer Defendants" Motion to Dismiss, Page 4, Paragraph 2, citing allegations in the Re–Filed Omnibus Amended Complaint, "Mr. and Mrs. Michael Chapman rented the house since 1991. In June of 1998, as a result of a storm, there was a power outage. Notwithstanding that there was insufficient emergency egress in that area, Mr. and Mrs. Chapman permitted their children, Kyle, Brandon, Keith and their guests, Stephon Collins and Samuel Juster, to use candles for lighting in the basement where they were sleeping." Additionally, "The Defendants, Mr. and Mrs. Chapman, went to bed without making sure that all candles had been extinguished." Further, "They told their son, Keith, to

make sure he extinguished the candles before he went to sleep." Finally, "Upon going to sleep, Keith Chapman left one of the candles lit. It was this candle that caused the fire which in turn caused the injuries to the Plaintiffs."

In support of their contention that the circuit court properly granted the motion to dismiss on the basis that the Re–Filed Omnibus Amended Complaint alleged intervening negligent acts of others which constituted superseding causes, the Lis premise their theory that their negligence was not a legally cognizable cause of the harm on three general grounds. First, they reassert their incorporation by reference in their motion to dismiss of the legal authority submitted to the court by the manufacturer defendants. In that regard, they specifically refer to the court's memorandum opinion and its analysis based principally on the *Restatement* §§ 435(2) and 442(2).

In their reliance on § 435(2), they argue that the actual harm did not fall within a general field of danger that they should have expected and that, from the court's perspective, viewed retrospectively, it would appear highly extraordinary that the negligence would have brought about the harm. Finally, they argue that their negligence was passive in contrast to that of the Chapmans. Consequently, they contend, it was not foreseeable that the Chapmans would go to sleep on the third floor of the house and leave minors alone burning candles in the basement and that, contrary to Mr. Chapman's explicit instructions, Keith Chapman would leave a candle burning when he retired. According to the Lis, this conduct amounted to intervening negligent acts constituting superseding causes.

Although we have concluded, *supra*, that a superseding cause analysis could not be properly applied to the facts regarding the negligence of the manufacturer defendants, Ryland and Summit, as set forth in the Re–Filed Omnibus Amended Complaint, the nature of the Lis' undisputed, negligent acts and their landlord/tenant relationship with the Chapmans, even on the motion to dismiss, presents a stark contrast in comparison to the manufacturer defendants, Ryland and

Summit. As we shall discuss, *infra,* the Lis, themselves, characterize their conduct as "one of two separate *superseding* acts of negligence or causation that directly caused the subject fire...." (Emphasis added). Notwithstanding the number of intervening negligent acts and the other factors the court cited from *Restatement (Second),* an analysis applying the pertinent legal principles leads ineluctably to the conclusion that the intervening acts of negligence of others did not break the chain of causation and, thus, did not operate to supersede the negligence of the Lis. We explain.

## INCORPORATION OF MEMORANDUM OPINION

█ Initially, the Lis, in specifically incorporating and relying on the legal authority cited in the court's memorandum opinion, do not factor in the context within which the court applied the law with respect to whether an intervening negligent act constitutes a superseding cause. The court's action in ruling on the motions to dismiss filed by the manufacturer defendants, Summit and Ryland was based on the legal premise advanced by the aforementioned appellees that the allegations set forth in the Re–Filed Omnibus Amended Complaint, accepted as true, negated appellants' allegations that the injuries and fatalities they sustained were proximately caused by them. More specifically, at the hearing on the motion to dismiss, the defendants conceded, for purposes of the motion, that the smoke detector was defective, but that the injuries and fatalities were caused, not because the young boys were not alerted in time to escape the fire, but rather because they were unable to escape because of lack of an emergency egress. Moreover, the arguments set forth by the other appellees in their briefs are more comprehensive and compelling than the appellants' arguments that the allegations in the Complaint establish that the Lis' negligence proximately caused the harm. Thus, while we may apply the law that was relied upon by the circuit court as the Lis urge, adopting the theory of causation advanced at the hearings on the motions to dismiss filed by the defendants, need not lead us to the result reached by the circuit court as to the liability of the Lis.

The Lis, citing the discussion of proximate cause set forth in the circuit court's opinion, including the six factors in the Restatement, § 442(2), conclude that "it is clear that the acts and/or omissions of Michael Chapman and Catherine Chapman, by knowing that the basement area was being illuminated by candles without adult supervision, constituted an intervening act operating as a superseding cause." Beginning with the delineation in the court's opinion of the two components of proximate cause, *i.e.*, causation in fact and legal causation, the Lis, relying on the "but for" test, contend that the allegations fail to establish causation in fact. In their view, "it was more probable than not that "but for [the Chapmans] negligent acts [ ], a fire would not have occurred at the Lis' property on June 14, 1998. In *Peterson v. Underwood*, 258 Md. 9, 264 A.2d 851 (1970), the Court of Appeals articulated the "but for" test:

> Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission. This determination is subject to considerations of fairness or social policy as well as mere causation. *Thus, although an injury might not have occurred 'but for' an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury.* Bloom v. Good Humor Ice Cream Co., 179 Md. 384 [18 A.2d 592] (1941), or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes. *Dersookian v. Helmick*, 256 Md. 627, 261 A.2d 472 (1970); *Liberto v. Holfeldt*, 221 Md. 62 [155 A.2d 698] (1959).

*Id.* at 16, 264 A.2d 851 (emphasis added).

In our decision in *Yonce v. SmithKline Beecham Clinical Laboratories, Inc.*, 111 Md.App. 124, 680 A.2d 569 (1996), we discussed the limited application of the "but for" test:

> The "but for" test does not resolve situations in which two independent causes concur to bring about an injury, and either cause, standing alone, would have wrought the identical harm. The "substantial factor" test was created to meet

this need but has been used frequently in other situations. Prosser & Keeton § 41 at 266, quoted in *Eagle–Picher Indus., Inc. v. Balbos*, 326 Md. 179, 208 [604 A.2d 445] (1992). The "substantial factor" test is firmly rooted in the Restatement (Second) of Torts ("Restatement") approach to proximate cause.

*Id.* at 138, 680 A.2d 569.

Although it is more probable than not that the injuries and deaths would not have occurred had there been emergency egress from the enclosed rooms, the harm would not have occurred as a result of the negligence of the Lis independent of the negligence of the Chapmans. As we observed in *Yonce*, however, the "but for" test is only one of two tests in determining whether a party's negligence is the cause in fact of a plaintiff's injury. The alternative method, more appropriate to the facts of this case, is a consideration of whether the Lis' acts in furtherance of the use of the enclosed basement area for bedrooms constituted a substantial factor in bringing about the harm.

Whether a negligent act or acts constitute a substantial factor devolves upon a consideration of a number of other factors and the extent of the effect which they have in producing the harm, whether the conduct has created a force or forces, which are in continuous and active operation up to the time of the harm as opposed to a harmless situation unless acted upon by the party who created the force or forces and the lapse of time. *Restatement*, § 433(a), (b) and (c). The circuit court concluded that the Complaint faulted all of the appellees for the serious and fatal injuries. The negligence of the Lis, however, was woven throughout the fabric of the unfortunate sequence of events leading up to the fire. A proximate and direct connection could be drawn between the alleged initial approval, consent and encouragement by the Lis to the use of the enclosed rooms without emergency egress in the basement as bedrooms up to and including the moments the boys attempted unsuccessfully to escape the conflagration.

As noted, the circuit court relied almost exclusively on the holding in *Manor Inn* in reaching its decision. The Court of Appeals, citing its decision in *Pa. Steel Co. v. Wilkinson*, 107 Md. 574, 69 A. 412 (1908), articulated a succinct exposition of the circumstances under which the original act of negligence is deemed to have been an initial link in a chain of events, which, in combination with the intervening act of negligence, resulted in the harm:

"[T]he defendant is liable where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act, or omission, or even it is generally held, if the intervening acts or conditions were of a nature, the happening of which was reasonably to have been anticipated, though they have been acts of the plaintiff himself."

*Manor Inn*, 335 Md. at 158, 642 A.2d 219.

The Court of Appeals, in quoting from *Pa. Steel Co.*, cited the passage as an illustration of the application of the Restatement, § 447(c), which provides that an intervening negligent act is not rendered a substantial factor if "the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." Applied to the facts of the case before us, the Re–Filed Omnibus Amended Complaint, Count I, ¶ 41(d) alleges, "the Lis also had a duty to comply with the City of Gaithersburg's rental housing ordinance,[10] which prohibited the use of the enclosed basement rooms as sleeping areas due to the lack of proper emergency egress and smoke detectors in the immediate vicinity." The referenced Count further alleges that the Lis knew that the enclosed rooms were being used as sleeping areas and that the Chapmans, in reliance on

---

10. We have not been provided with a citation to the Gaithersburg rental housing ordinance to which reference is made or a copy of the same; we note, however, that none of the parties has taken issue with the fact that such a provision exists and appellees Dieffenbach and Hightower specifically state, in their brief, "The Chapmans had been illegally using the basement rooms as bedrooms for years" by the time Dieffenbach was hired to do any work on the home.

the Lis' representations that the enclosed rooms could be used as sleeping areas and condoned such use, continued to use the rooms as bedrooms and, in fact, renewed their lease, continuing to use the enclosed rooms. Quintessentially, the potential for the outbreak of fires is the specific emergency for which provisions requiring that there be emergency egress from residential dwellings are enacted.

## GENERAL FIELD OF DANGER

Turning to the question of whether the Complaint sufficiently alleges other intervening acts of negligence which constitute superseding causes, the Lis, citing *Restatement*, § 435(2), claim that the negligent acts of the Chapmans were superseding causes because the fire and its aftermath did not fall within the general field of danger that they could have anticipated. Looking back from the tragic event to their negligence, according to the Lis, it should appear to the court, highly unlikely that their negligence should have brought about the harm. In support of these propositions of law, they rely principally on *Stone v. Chi. Title Ins. Co. of Md.*, 330 Md. 329, 337–40, 624 A.2d 496 (1993).

In *Stone*, the Court of Appeals reviewed the dismissal of the appellant's complaint, alleging negligence against his lawyer, James Savitz, and the law firm he had retained to, *inter alia*, handle the settlement on the purchase of his residence and to record a release of a deed of trust against the home in order that he might obtain a provisionally approved home equity loan in the amount of $50,000. Stone had intended to use money made available by the loan to purchase "stock puts" to protect his financial position in response to certain stocks he had purchased on credit.

When the appellant, the lender and the title company were unsuccessful in contacting Stone's attorney or other members of the law firm over a period of fifteen days to have the release prepared and recorded, Stone's broker called his margin account loans, with a pay off-date three weeks after appellant first attempted to contact Savitz. Consequently, the

appellant was forced to sell stock at a substantial loss to satisfy the call. The release that Stone had sought was not recorded until after the August, 1990 collapse in the market and Stone maintained that he lost money when certain stocks in which he was speculating declined. That loss, in turn, was proximately caused by his sale of those stocks, which had been caused by his lack of funds to pay off other loans, which was caused by his inability to secure a second mortgage which would have made his provisional home-equity loan available, the proceeds to be used to meet his broker's margin call. All of this was caused, according to Stone, by Savitz's negligence in failing to prepare and record the deed.

Holding that Savitz's negligence was not the proximate cause of the ensuing harm which befell Stone, the Court concluded that there was no acceptable nexus between Savitz's negligent conduct and the stock market losses suffered by Stone.

The Court reasoned that Stone's stock market damages were a highly extraordinary result of Savitz's failure to timely record the release and that there was no allegation in the amended complaint that Savitz or his firm had knowledge at any time that Stone was buying stock on margin. *Id.* at 340– 41, 624 A.2d 496. No reasonable person, the Court said, would have foreseen that, almost a year after the settlement which Savitz conducted, Stone would have an emergency need for cash, would attempt to borrow against his home to satisfy that need and, unable to do so, would have to sell stock in a depressed market to raise it. *Id.* Most important, holding that the result might have been different had Savitz or his firm notified Stone that one of the purposes for purchasing the house was to have a ready source of collateral should he have to raise cash to meet a margin call to avoid the need to sell stock in a weak market, the Court pointed out that there was no allegation that Savitz had been notified of Stone's financial crisis at the time the problem was brought to his attention. The required nexus between Savitz's negligence in failing to record the deed and Stone's loss, according to the Court, was

knowledge that the former's negligence would produce these consequences.

To further illustrate the concept of proximate causation, the *Stone* Court cited *Henley v. Prince George's County,* 305 Md. 320, 503 A.2d 1333 (1986), which, in applying Restatement § 435(2) (1965) [11] to the facts in that case, explained that the test of foreseeability is "intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm, and to avoid the attachment of liability where ... it appears 'highly extraordinary' that the negligent conduct should have brought about the harm." *Id.* at 334, 503 A.2d 1333.

The Court further observed:

"Foreseeability as a factor in the determination of the existence of a duty involves a prospective consideration of the facts existing at the time of the negligent conduct. Foreseeability as an element of proximate cause permits a retrospective consideration of the total facts of the occurrence, including the criminal acts of a third person occurring after the original act of negligence of a tortfeasor."

*Id.* at 336, 503 A.2d 1333. *See also Atlantic Mut. Ins. Co. v. Kenney,* 323 Md. at 129–30, 591 A.2d 507.

---

**11.** The Restatement (Second) of Torts § 435(2) (1965) states:
"The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."
The Comment c to that section explains:
"Where it appears to the court in retrospect that it is highly extraordinary that an intervening cause has come into operation, the court may declare such a force to be a superseding cause. Analytically, the highly extraordinary nature of the result which has followed from the actor's conduct (with or without the aid of an intervening force) indicates that the hazard which brought about or assisted in bringing about that result was not among the hazards with respect to which the conduct was negligent. Strictly, the problem before the court is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm from hazard in question. However, courts frequently treat such problems as problems of causation."
(Citations omitted).

With respect to the scope of what should be anticipated, the *Stone* Court explained that the test of foreseeability is not whether the particular event that occurred was to be expected, but whether the event "fell within a general field of danger which should have been anticipated." *Stone,* 330 Md. at 329, 624 A.2d 496. Hence, foreseeability is derived from the notion that one should be held to account for probable results, which, in the contemplation of the parties, arise naturally from the acts complained of according to the usual course of things and which should have been anticipated.

 The considerations that persuade us that the Chapmans' intervening act of negligence is a normal consequence of a situation created by the Lis' conduct are also determinative of whether the Chapmans' negligent acts fell within a general field of danger which the Lis should have anticipated. We noted in *Yonce,* 111 Md.App. at 148, 680 A.2d 569, citing *Restatement (Second),* § 447, that "[e]ven if the intervening force is the negligence of a third party, it does not necessarily become a superseding cause." We then set forth § 447. That section provides, alternatively, that the intervening act does not become a superseding cause if the party committing the initial act should have realized that one would subsequently so act *or* that a reasonable man knowing the situation at the time of the subsequent negligent acts would not regard the subsequent actions as highly extraordinary *or* that the intervening act is a normal consequence of the initial conduct and such subsequent act is not extraordinarily negligent.

 The above section of the *Restatement* instructs that consideration be given to whether the intervening act is one which, in the usual course of events, a reasonable person should anticipate or expect. In this case, much is made of the culpability of the Chapmans in their decision to use candles for lighting and their negligence in failing to insure that the candles were extinguished. *See Restatement,* § 442(f). In *Yonce,* we pointed out that Comment (e) to Restatement (Second) § 435 states:

It is impossible to state any definite rules by which it can be determined that a particular result of the actor's negligent conduct is or is not so highly extraordinary as to prevent the conduct from being a legal cause of that result. This is a matter for the judgment of the court formulated after the event, and therefore, with the knowledge of the effect that was produced.

*Id.* at 143, 680 A.2d 569.

Thus, focusing initially on whether the result of the Lis' negligent conduct was highly extraordinary, it was within the province of the court to make that determination. In the case at hand, the Lis have adopted the legal authority set forth in the circuit court's memorandum opinion. Second only to the Chapmans' blameworthiness, the court, however, in that opinion, ascribes the cause of the deaths and injuries, as alleged, to the negligence of the Lis. Although, at the request of the Lis, the court's ruling, allowing them to withdraw their request for a hearing was proper, the bases of the dismissal of appellants' claims against the other defendants is not applicable to the Lis.

Of paramount import in factoring in the nature of the result into the causation equation, Comment (c) to *Restatement (Second)* § 435 provides, in pertinent part, that the court may declare a force to be a superseding cause "where it appears to the court in retrospect that it is highly extraordinary that an intervening cause has come into operation." In an analysis of the legal effect of the highly extraordinary nature of the result where the hazard that brought about that result was not among those associated with the negligent conduct, the court must determine whether the duty imposed on the negligent party was designed to protect the one harmed from the risk of harm from the particular hazard in question. With regard to the duty owed by a landlord, the Court of Appeals, in *Matthews v. Amberwood Associates Ltd. Partnership, Inc.*, 351 Md. 544, 719 A.2d 119 (1998), declared:

The tenant Morton was maintaining an extremely dangerous instrumentality, both in the leased premises and at

times in the common areas. The landlord knew about the dangerous pit bull dog for a considerable period of time. . . . Under the circumstances here, and the prior cases in this Court emphasizing the factor of a landlord's control, it is not unreasonable to impose upon the landlord a duty owed to guests who are either on the leased premises or the common areas.

\* \* \*

This Court, in *Jacques v. First National Bank of Maryland,* 307 Md. 527, 534–535 [515 A.2d 756] (1986), stated that in determining whether a duty exists, the "two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. By contrast, where the risk created is one of personal injury, *no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.*"

*Id.* at 560–61, 719 A.2d 119 (emphasis added, footnote omitted).

As the Chapmans' landlord, the particular risk of harm from which the Lis had a duty to protect them was to ensure the habitability and safety of the leased premises. Although no direct relationship need be shown where a risk involves personal injury, where, as here, there is the direct relationship of landlord and tenant, the duty is explicit and manifest. In accordance with the requirement set forth in *Stone* and *Matthews* that an element of foreseeability is the knowledge or reason to know that one's act(s) of negligence may harm or put in motion forces which bring about harm to another, the prohibition in the Rental Housing Ordinance enacted by the City of Gaithersburg against the use of basement bedrooms without emergency egress is specifically designed to protect residents from the risk, *inter alia,* of injury

or death resulting from house fires. According to the allegations in the Re–Filed Omnibus Amended Complaint, the Lis knew that the Chapmans were using the enclosed basement rooms as sleeping areas, knew that use of the enclosed rooms as sleeping areas violated applicable housing and rental codes, made material representations that the enclosed rooms could be so used and reaffirmed their approval of such use upon renewal of the lease.

The Lis' argument that, because of the extraordinary negligence of the Chapmans, they could not have foreseen that the fire and its aftermath would occur is, in essence, a claim that they could not anticipate the specific manner of the harm. The test, under *Stone*, is not whether the particular event that occurred was to be expected, but whether the event "fell within a general field of danger which should have been anticipated." The general field of danger is prominently and specifically designated in an ordinance and building code designed, not just to protect residents from fires ignited by acts of God and where there is no human error, but from fires regardless of origin. Notwithstanding that the Lis might not have anticipated the Chapmans' specific acts of negligence, the negligent acts of the Chapmans were clearly within the general field of danger as proscribed by the local laws of the City of Gaithersburg.

## ACTIVE VERSUS PASSIVE NEGLIGENCE

On this appeal, the Lis, having figuratively drawn fire from the manufacturer defendants, Ryland and Summit, whose legal theory, simply put, is that the superseding causes of the injuries to the Chapman boys and the deaths of Stephon Collins and Samuel Juster were the negligent acts of the Lis resulting in the creation of a deathtrap and the negligent acts of Michael, Catherine and Keith Chapman, in not ensuring that the candle was extinguished before the boys went to sleep.

Not surprisingly, faced with the onslaught of allegations that it was their negligence in creating a potential for a

cauldron in the basement of the residence that proximately caused the injuries and deaths, the Lis, on this appeal, take aim at the Chapmans. Acknowledging in their argument in support of their motion to dismiss that their conduct constituted one of "two [ ] separate superseding acts of negligence, or causation, that directly caused the subject fire at the [Lis'] property," they argue that "negligence of the Chapmans was active, while any negligence by the Lis was passive." They enumerate, as the "active" acts of negligence, the fact that Michael Chapman rented the property for almost eight years before learning that the smoke detector did not have a battery backup system; that Michael and Catherine Chapman provided candles, situated on a wood table surrounded on three sides by fabric, instead of flashlights, but did not ensure that the candles were extinguished before they went to bed; that the children would not follow the parents' instructions to extinguish the candles; that the children would use candles without adult supervision; and that a power outage would occur.

In maintaining that any negligence on their part was passive, they seek solace in *Bloom*, 179 Md. 384, 18 A.2d 592 (1941). In *Bloom*, the Court considered whether the act of inviting a ten-year-old boy to cross the street, to a place of danger to buy ice cream, rendered the vendor liable in negligence for proximately causing injuries sustained by the boy on his return trip across the street. The Court, noting that proximate cause requires that an act or omission of a duty be the direct and continuing cause of an injury, delineated the distinction between active and passive negligence:

> The negligent acts must continue through every event and occurrence, and itself be the natural and logical cause of the injury. It must be the natural and probable consequence of the negligent act, unbroken by any intervening agency, and where the negligence of any one person is merely passive, and potential, while the negligence of another is the moving and effective cause of the injury, the latter is the proximate cause and fixes the liability.

*Id.* at 387, 18 A.2d 592.

The above language from *Bloom* has been limited by subse-

quent decisions of the Court of Appeals.[12] In *Matthews*, 351 Md. at 544, 719 A.2d 119, the Court of Appeals considered whether negligence of a tenant and the negligence of appellant, who was visiting with the tenant, were superseding causes of appellant's sixteen-month-old son's demise following a fatal mauling by a pit bull terrier in an apartment managed by appellee. Liability had been asserted against appellee for failure to enforce the "no pets" restriction in the lease. Judge Eldridge, writing for the Court, pointed out that, while the *Bloom* decision was based on a holding of intervening, superseding cause, the "merely passive negligence" language in the instruction to the jury was deficient in that it contained no reference to the critical concept of foreseeability. *Id.* at 578, 719 A.2d 119 (citing *B G & E v. Lane*, 338 Md. 34, 52, 656 A.2d 307 (1995)). The decision in *Matthews* emphasized that "the intervening negligence is not a superseding cause if it is reasonably foreseeable." *Matthews*, 351 Md. at 578, 719 A.2d 119.

The *Matthews* Court, finding deficient a proposed instruction submitted by the defendant (citing *B G & E v. Lane*, 338 Md. 34, 656 A.2d 307 (1995)), explained: "Essentially, the intervening negligence is not a superseding cause if it is reasonably foreseeable." *Lane*, 338 Md. at 52, 656 A.2d 307. The Court concluded that the parsing of responsibility between multiple tortfeasors is best explained by the repeatedly quoted passage from *State v. Hecht Company*, 165 Md. 415, 422, 169 A. 311 (1933):

> "If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also

12. *See, e.g., Matthews v. Amberwood Associates Ltd. Partnership, Inc.,* 351 Md. 544, 577, 719 A.2d 119 (1998); *Yellow Cab Co. v. Hicks,* 224 Md. 563, 568, 168 A.2d 501 (1961); *Jubb v. Ford,* 221 Md. 507, 514, 157 A.2d 422 (1960); *Texas Company v. Pecora,* 208 Md. 281, 291–92, 118 A.2d 377 (1955). *See also Caroline v. Reicher,* 269 Md. 125, 131–34, 304 A.2d 831 (1973); *Farley v. Yerman, supra,* 231 Md. at 449, 190 A.2d 773.

be negligent, the liability of the person first in fault will depend upon *the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not.* If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another."

*Matthews,* 351 Md. at 578, 719 A.2d 119 (emphasis added).

The *Matthews* Court ultimately held:

In the case at bar, the evidence clearly showed, and the jury found, that the injuries caused by Rampage were foreseeable by the defendants. Thus, the negligence of the tenant Morton, and any possible negligence on the part of Matthews, were simply concurrent causes of the injuries and death of Tevin. They were not superseding causes.

*Id.* at 579, 719 A.2d 119.

Applying the above test set forth above in *State v. Hecht Company,* the *Matthews* Court affirmed the jury verdict that found the injuries caused by the pit bull were foreseeable by the defendants and that any possible negligence of the mother of the sixteen-month-old boy [13] and any possible negligence on the part of the tenant, were simply concurrent—not superseding—causes of the injuries and death of the minor child.

From the foregoing, the concept of passive negligence in an "intervening negligent act/superseding cause" analysis is looked upon with disfavor without a consideration of the factors, relative to foreseeability. Applying the two-part test enunciated in *Hecht,* the allegation that the Lis represented to the Chapmans that they could use the enclosed rooms as sleeping areas and that they knew of and condoned such use,

---

**13.** Because the negligence of the parent or custodian of an infant on whose behalf the parent or custodian has initiated an action may not be imputed to the infant under Md.Code (1974, 1975 Repl.Vol.) Cts. & Jud. Proc. § 10–910, the mother of the sixteen-month-old could not be held liable.

knowing such use to be in violation of the City rental housing ordinance, exposed the Collins, Juster and Chapman boys to a risk of injury in a case where Keith Chapman and his parents were also indisputably negligent. The liability of the Lis, then, depends upon whether the negligent acts of the Chapmans are acts which a person of ordinary experience and sagacity, acquainted with all of the circumstances, could reasonably anticipate. Whether the Chapmans' conduct was "highly extraordinary," in light of the particular negligent acts of the Lis which created forces uniquely designed to bring about the particular harm actually realized, is a determination that could not have been made, as a matter of law, on a motion to dismiss. Substantial information in the form of depositions, affidavits and incident reports were provided to the circuit court on the motions for summary judgment filed by appellees Dieffenbach and Hightower, which are demonstrable explicit accounts of what occurred between the time the fire ignited and the enclosed rooms were ultimately evacuated.[14]

The Lis, having conceded in the first instance that their negligence was a substantial factor—and indeed a superseding cause—of the death and injuries, the circuit court erred in granting the Lis' motion to dismiss Counts I and II of the Re-Filed Omnibus Amended Complaint. The Lis' negligence created a force which was in continuous and active operation up to and including the frantic efforts of the young boys to escape from the enclosed bedrooms. As such, the negligence

---

14. The deposition of Brandon Chapman provides an explicit account of the moments as he, his brothers and their guests frantically attempted to escape from the bedroom through the family room then to the French doors which led to the rest of the house. According to Brandon, they were unable to escape because the locks (handles) on the doors were too hot and the glass in the French doors did not break when he attempted to kick it in. He estimated that, in the approximately two or three minutes before he passed out in his bedroom, he heard Stephon screaming his [Keith's] father's name; he also heard Sammy [Justin] screaming; and he saw Keith carrying one of the boys. He awakened in the ambulance. His testimony would be relevant on the issue of whether the fact that the boys were sleeping in an area where there was no emergency egress was what proximately caused the deaths and injuries.

of the Chapmans was not a cause which superseded that of the Lis, but rather a concurrent cause, based on the allegations in the Re-filed Omnibus Amended Complaint. *Matthews*, 351 Md. at 579, 719 A.2d 119. Because we have concluded that the circuit court's ruling, based on the allegations in the Re–Filed Omnibus Amended Complaint, was in error because the reasoning that applied to the other appellees was inapplicable to the Lis' motion to dismiss and because the grant of their motion to dismiss was erroneous for the same reasons as those set forth, *supra*, for the other appellees, reversal of the circuit court's ruling has the effect of allowing the court to consider, anew, the allegations contained in the Complaint. In other words, notwithstanding our conclusion that a proper ruling as to the issue of causation based only on the allegations would have been that the negligence of the Lis was a concurrent cause, appellants are not precluded from reasserting their claims against the Lis, which must, on remand, survive their motion for summary judgment.[15] Accordingly, we reverse and remand for further consideration of appellants' claims against the Lis.

## D

### *Strict Liability*

### MANUFACTURER DEFENDANTS, RYLAND HOMES AND SUMMIT ELECTRIC

Count III of appellants' Complaint alleged that the manufacturer defendants were strictly liable for design defects because, at the time the smoke detectors at issue left the manufacturer, they were in the unreasonably dangerous condition of not having a back-up power source. Strict liability is

---

15. The Lis, pursuant to a motion for summary judgment on remand, may be able to raise a dispute as to material facts by *e.g.*, controverting the allegations in the complaint that they knew, condoned and, indeed, encouraged the use of the enclosed rooms in the basement for bedrooms or that they knew or should have known about the manufacturer's recall of the smoke detectors at a time when the City of Gaithersburg had enacted a building code that made mandatory dual powered or battery operated smoke/fire detectors.

alleged in Count IX of appellants' Re–Filed Omnibus Amended Complaint against Summit and in Counts XII and XIV against Ryland. The manufacturer defendants are alleged to have placed a product into the stream of commerce that was defective at the time it left their control. Summit and Ryland are alleged to have participated in the selection, installation, selling and placing into the stream of commerce a defective product.

The essential elements of a strict liability claim are delineated in the *Restatement,* § 402A. *Phipps v. GMC,* 278 Md. 337, 344, 363 A.2d 955 (1976). To recover on a claim of strict liability, a claimant must allege and prove that:

(1) the product was in defective condition at the time that it left the possession or control of the seller,

(2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition.

*Id.* The plaintiff need not produce any specific act of negligence on the part of the defendant as in a traditional negligence action. *Id.* "The relevant inquiry in a strict liability action focuses not on the conduct of the manufacturer but rather on the product itself" and the standard to apply becomes critical in determining whether a product is defective. *Id.*

As we have stated previously, the only issue is whether the circuit court could properly determine from the allegations in the complaint that any causation attributable to the manufacturer defendants, Ryland and Summit was superseded by the negligence of others. *Owens–Illinois, Inc. v. Armstrong,* 326 Md. 107, 117, 604 A.2d 47 (1992) (citing *Phipps, supra* for the proposition that "[c]ausation is a necessary element of any strict liability action"). Thus, in the case *sub judice,* appellees concede, for purposes of the motion, that appellants have sufficiently pled the defective condition of the smoke detector, that it was unreasonably dangerous and that it reached appel-

lants without substantial change. Their only challenge is that the smoke detector was not the cause of the injuries.

■■■ The trial court rejected the argument that the concept of superseding cause did not apply to product liability cases [16] and determined that the causal chain of events connecting the manufacturer defendants' acts to appellants' injuries had many links and involved a time span of over nine years. The focus of the trial court's inquiry was exclusively on the nature of the intervening acts, the court concluding that, "as a matter of law, it was not foreseeable when the smoke detectors were manufactured and installed in 1989, that so many different and substantial intervening acts of negligence, including violations of law, would occur so as to link the 'Manufacturer Defendants' alleged negligent act to appellants' injuries nine years later." The court found those intervening acts to constitute a superseding cause of the Plaintiffs' injuries.

Appellants' Re–Filed Omnibus Amended Complaint alleged that the manufacturer defendants, Summit and Ryland, failed to warn consumers of the dangers posed by the defect and that the breach of that duty caused the defective smoke detector to subject appellants to an unreasonably dangerous condition, *i.e.*, an unreasonable risk of injury and/or death from fire or smoke in the event of an incident causing a power outage. As a direct and proximate cause of the acts and omissions of the defendant manufacturers, Ryland and Summit in installing the defective smoke detector which failed to alert the Collins, Chapman, and Juster boys, who were asleep in the basement of the house on June 14, 1998, aver appellants, the fatalities and injuries resulted.

---

**16.** Liability is established by proof in products liability cases that the product was placed in a stream of commerce, containing a defect that was a "producing cause" of the event. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex.2006). Producing cause has been defined as "an efficient, exciting, contributing cause which, in a natural sequence, produced the injuries complained of." *Gerber v. Hoffmann–La Roche, Inc.*, 392 F.Supp.2d 907 (S.D.Tex.2005).

 Appellants incorrectly argue that the concept of superseding causation applies to product liability cases only when there is misuse because, when the unforeseeable misuse of a product causes the injury, the misuse is a superseding cause. *See e.g. Lightolier, a Div. of Genlyte Thomas Group, LLC. v. Hoon*, 387 Md. 539, 561–62, 876 A.2d 100 (holding that failure to heed warnings rather than malfunctioning safety switch was proximate cause of the fire) while it is true that, if the sole proximate cause of the injury is misuse of the product, such misuse is a superseding cause, *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 596, 495 A.2d 348 (1985), a plaintiff, in a products liability case, must always prove a causal relationship between the defect and the injury. *Wood v. Toyota Motor Corp.*, 134 Md.App. 512, 518, 760 A.2d 315, *cert. denied*, 362 Md. 189, 763 A.2d 735 (2000).

 Because a plaintiff is required to show a causal connection between the defect and the injury, whether a cause that supersedes that resulting from a defective product in a products liability case is always relevant. While misuse of a product is not an "affirmative defense" to a products liability action, it is a defense in the sense that proof of misuse negates one or more essential elements of a plaintiff's case. *Ellsworth v. Sherne Lingerie Inc.*, 303 Md. 581, 495 A.2d 348 (1985). Accordingly, the element of "causation" always implicates an analysis of intervening and superseding causes.

The Court of Appeals, in *Eagle–Picher Indus., Inc. v. Balbos, supra*, 326 Md. 179, 604 A.2d 445 (1992), rejected the assertion espoused by the appellant that the "concept of superseding causation does not apply in product liability cases, except when a product is misused in an unforeseeable manner." In *Eagle–Picher*, the Court discussed whether an employer's failure to warn of the dangers of asbestos constituted a superseding cause. It engaged in a superseding cause analysis where product misuse had not been alleged. The Court held that "[a]n intermediary's negligent failure to prevent harm will be a superseding cause when it is 'so extraordi-

nary' as to not have been reasonably foreseeable." *Id.* at 224, 604 A.2d 445.

The manufacturer defendants, Ryland and Summit, having conceded placing a below-industry standard product in the stream of commerce, challenge only whether there was a causal relationship between the alleged defect and the harm sustained by the boys. The thrust of their argument is that the Re–Filed Omnibus Amended Complaint ". . . elaborately details the numerous intervening acts, both negligent and illegal, that occurred after [ ] 1989." Summit, noting the concession that the smoke detector did not meet industry standards, correctly points out that "products liability was not an issue on the motion below." Summit, however, dismisses the affidavit of appellants' expert, Eugene M. Sober, offered to establish that the children would have been able to exit the basement unharmed had the smoke detector been equipped with an alternative power source. Summit posits, "Perhaps if he somehow linked the elapsed time between the start of the fire and the point when some of the children attempted to exit the basement, he could then estimate that an alarm would have caused them to act more quickly. Instead, he offers no basis for the proposition that the alarm wouldn't even have woken the children."

The manufacturer defendants, Ryland and Summit ask that we affirm the grant of the motion to dismiss which, as we observed, must be upon facts that are susceptible of but one inference. Upon application of the principles applicable to a determination of superseding cause to the facts of this case, Summit's assail on Sober's affidavit would certainly be considered as to whether it supported the proposition that lack of an advance warning was a substantial factor in causing the deaths and injuries. But, ultimately, whether the hardwired smoke detector was a substantial factor must be determined on a fully developed record.

Additionally, it is further contended that the smoke detector performed exactly as intended and, indeed, as promised. Specific reference is made by appellees to the User's Manual

which explicitly informs the consumer that the smoke detector would not function during an electrical shortage or a power outage. However, the circuit court could not properly consider the contents of the manual, a document beyond the four corners of the complaint, on a motion to dismiss.

Considering the net effect of the interrelationship between intervening negligent acts in a determination of superseding cause, in *Wankel v. A & B Contractors, Inc.,* 127 Md.App. 128, 168, 732 A.2d 333 (1999), we agreed with the trial court "that the intervening causes that allegedly combined to link one segment of the causal chain to another, so that an abandoned wooden stake contributed to the explosion of appellant Wankel's home, were highly extraordinary and, in the aggregate, unforeseeable." Simply put, the effect that a factor has, in causing harm, standing alone, when there are multiple causes, is determined, not only by the nature of the particular factor, but also by whether the aggregate of the causes produce an unforeseeable result. The manufacturer defendants, Ryland and Summit may ultimately prevail in their assertion that the aggregate of the intervening negligence of the Chapmans, the Lis and the City of Gaithersburg combined to link one segment of the causal chain to another, such that the lack of knowledge that the hardwired smoke detector would not operate during a power outage and its failure to provide advanced warning were but two factors in the chain, producing an unforeseeable result. That determination, however, is left to another day when the principle may be applied to the facts as gleaned from all relevant and material information. Accordingly, we reverse and remand the counts alleging design defect, strict liability and failure to warn.

## E

### Express and Implied Warranties
### MANUFACTURER DEFENDANTS

The trial judge, in ruling on the manufacturer defendants' Motion to Dismiss, granted the motion as to Counts III, IV, V, VI and VII. In Count V of the Re–Filed Omnibus Amended

Complaint, appellants allege that, under Section 2–314 of the Annotated Code, the manufacturer defendants extended an implied warranty of merchantability with respect to their product.

In Count VI of the Re–Filed Omnibus Amended Complaint, appellants allege that the manufacturer defendants expressly warranted, by reason of "their marketing, advertisements, warranties, sales literature, owners manuals, and other representations that their product(s) and in particular the smoke/fire detector at issue was fit for the purpose of [which] it was intended, namely the detection and advance warning of smoke and/or fires." They further allege that, by failing to provide a product free from design and/or manufacturing defects, *i.e.*, "failing to equip the model/unit with a battery or alternative safety power supply," they breached express warranties under Section 2–313 of the Commercial Law Article of the Maryland Annotated Code.

Finally, it is alleged that, through their "advertisements, warranties, sales literature, owners manuals, and other representations that their product(s) were . . . fit for the purpose it was intended, namely the detection and advance warning of smoke and/or fires."

As noted, the trial judge's ruling in favor of the manufacturer defendants as to the express and implied warranty claims was pursuant to their motion to dismiss, rather than summary judgment. In dismissing these claims, the court could consider only the well pleaded allegations of fact in the Re–Filed Omnibus Amended Complaint to determine whether they establish any set of facts that would entitle appellants to relief. *Howard County v. Connolley,* 137 Md. App. 99, 114, 767 A.2d 926 (2001). The motion to dismiss must be evaluated based on the pleadings alone. When matters outside of the pleadings are presented, the motion should be treated as one for summary judgment and "all parties shall be given reasonable opportunity to present all material made pertinent. . . ." Md. Rule 2–322(c).

The Court of Appeals explained in *Davis v. DiPino*, 337 Md. 642, 650, 655 A.2d 401 (1995):

> Furthermore, our cases have consistently held that in appeals from either a motion for summary judgment or a motion to dismiss, an appellate court must focus on whether the trial court properly ruled on the motion before it. For example, in *Antigua Condominium v. Melba Investors*, 307 Md. 700 [517 A.2d 75] (1986), the defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted and the trial court granted that motion. On appeal, the Court of Special Appeals remanded certain claims to the trial court after concluding that the allegations in plaintiff's complaint may have stated a legally sufficient cause of action. On certiorari to this Court, the defendants argued that certain documents produced in discovery should be considered in ruling on defendant's motion to dismiss. We refused to consider those documents and noted that the discretion to treat a motion to dismiss as a motion for summary judgment and thereby consider matters outside the pleadings is committed to the trial court where the plaintiff is given "a reasonable opportunity to present ... additional pertinent material. We cannot exercise the discretions which are in the first instance committed to the trial court." *Antigua Condominium*, 307 Md. at 719 [517 A.2d 75] (citation omitted). Thus, because the trial court did not convert the motion to dismiss into one for summary judgment by considering the discovery documents, we refused to consider those documents in determining whether plaintiff's complaint stated a legally sufficient cause of action. *Cf. Eisel v. Board of Education*, 324 Md. 376, 380 [597 A.2d 447] (1991)(noting that "because judgment was entered on summary judgment," the court may consider admissible facts from the record in determining whether the trial court's ruling was proper); *Shofer v. [Stuart] Hack Co.*, 324 Md. 92, 97 [595 A.2d 1078] (1991) (treating a motion to dismiss as a motion for summary judgment because the circuit court relied on discovery material and affidavits in

ruling on the motion), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).

The manufacturer defendants, in maintaining in their brief that the Re–Filed Omnibus Amended Complaint failed to establish proximate causation, argue that "the Complaint itself negates existence of proximate cause ...." After listing the allegations which they contend negate proximate cause, they conclude:

According to the very facts alleged in the complaint, then, the instructions and warnings provided by the manufacturer defendants with the smoke alarms were sufficient to prevent the injuries and fatalities and would have done so but for the unforeseeable event that the instructional materials were not provided to the occupants of the house.

The major premise upon which appellees' position rests is that their breach of express and/or implied warranties, *vel non,* is irrelevant to their legal theory that the injuries and deaths resulted, not because of the inoperable smoke detector, but because the boys were unable to escape the windowless room. Apart from the theory that they successfully argued on the Motion to Dismiss, they maintain that the smoke detectors operated precisely as they were designed to function and that any defective design or breach of warranty theory is overcome by the instructions which accompanied them. The affirmations of fact contained in the User's Manual, they say, were accurate and were not breached. In addition, the owner was put on notice that "[h]ard-wired alarms were approved for their ordinary purposes and were clearly noted in the Owner's Manual [sic] as not able to function in the event of a power outage."

In support of their theory, the manufacturer defendants posit what they consider a demonstrable inconsistency in appellants' allegations. The Re–Filed Omnibus Amended Complaint recites that, but for the failure of Summit and Ryland to deliver the User's Manual to the Lis, the Chapmans would have been provided with the information, thereby avoiding the catastrophic event. The manufacturer defendants

point out, however, that the Re–Filed Omnibus Amended Complaint simultaneously alleges that the manufacturer defendants breached express and implied warranties. If the warranties were sufficient to prevent the injuries and fatalities, they ask, how could it be that the manufacturer defendants did not properly warn their consumers?

Appellees' arguments, although convincing at first blush, are based on the information contained in the User's Manual. To be sure, the specific information in the User's Manual material to the claims for breach of warranty and failure to warn is the advisement that the smoke detector would not function during a power outage. The aforementioned syllogistic reasoning that appellees ask us to employ to conclude that the information contained in the User's Manual sufficiently warned consumers of the smoke detector's limitations required examination of the manual itself. As the Court of Appeals explained in *Davis v. DiPino, supra,* the circuit court had the discretion to treat the motion to dismiss as a motion for summary judgment and consider matters outside of the pleadings, provided the opposing party is afforded reasonable opportunity to present additional pertinent material. *Id.* at 650, 655 A.2d 401. Thus, the court could have exercised its discretion to consider the manual, although it was outside of the pleadings. Adhering to counsel's demand that the claims of implied warranties of merchantability and fitness for a particular purpose be decided pursuant to appellees' motions to dismiss, the court elected not to exercise its discretion to consider matters outside of the pleadings.

Had the court elected to consider the User's Manual, it may well have been persuaded that there was no breach of the implied warranty of fitness for a particular purpose because the instructions contained in the User's Manual, referred to by appellants as "the affirmations of fact," accurately described precisely how the product would perform. But, even had it reached a contrary result, a further analysis to determine whether other intervening acts were substantial and thus superseded the causative effect of the hardwired smoke detectors would be required. As to the more general implied

warranty of merchantability, based on industry standards, a superseding cause analysis would likewise be appropriate, but only upon facts susceptible of but one inference.

■ With respect to the express warranty claim, the manufacturer defendants correctly observe in their brief, "The Circuit Court based its ruling on the complaint's failure to allege facts that would establish the element of proximate cause, a necessary element to all of the product liability claims alleged against the Manufacturer Defendants." Further, they note that appellants devote "a substantial portion of their brief" discussing the other elements of their product liability claim. As we have previously noted, the court limited its consideration to the issue of proximate cause at the insistence of appellees' counsel who requested that their alleged negligence be evaluated in the aggregate of the sum total of the acts of negligence that contributed to the injuries and deaths.

The Court of Appeals, in *Rite Aid Corp. v. Levy–Gray*, 391 Md. 608, 620–21, 894 A.2d 563 (2006), recently explicated the distinction between express warranties and implied warranties:

"What differentiates [a] promise implied by law [*i.e.*, an implied warranty,] ... and an express warranty is that the 'standard of performance is set by the defendants' promises, rather than imposed by law.'" *Coca–Cola Bottling Co. of Cape Cod v. Weston & Sampson Engrs., Inc.*, 45 Mass.App. Ct. 120, 695 N.E.2d 688, 694 (1998) quoting *Anthony's Pier Four, Inc. v. Crandall Dry Dock Engrs., Inc.*, 396 Mass. 818, 489 N.E.2d 172, 175 (1986); *see also Housing Authority of Portland v. Ash Nat'l*, 36 Or.App. 391, 584 P.2d 776, 778 (1978) (stating that an *implied warranty "is a 'curious hybrid' between tort and contract law" and differs from express warranties based on contract); Md.Code (1975, 2002 Repl.Vol.), § 2–313, official cmt. 1 ("Express warranties rest on 'dickered' aspects of the individual bargain, and* go so clearly to the essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered terms. 'Implied' warranties rest so clearly on a common factual situation or set of conditions that no particular

language or action is necessary to evidence them and they will arise in such a situation unless unmistakably negated."). (Emphasis added).

The manufacturer defendants, citing the language of § 2–313, iterate that express warranties are created by an affirmation of fact or promise made which relates to goods. *Ergo,* they say, "All affirmations of fact contained in the Owners [sic] Manual here were accurate and were not breached." As the Court of Appeals explained in the above passage from *Rite Aid Corp.,* an express warranty, in essence, sounds in contract and, accordingly, is viewed from the perspective of the individual bargain. The manufacturer defendants correctly asseverate that the court's analysis never considered the claims of breach of express and implied warranties separate from the question of causation.

The claim of breach of express warranty alleges that the manufacturer defendants through "their marketing, advertisements, warranties, sales literature, owner's manuals, and other representations," generally, warranted that their product(s) would provide advance warning of smoke and/or fires. The manufacturer defendants, in their insistence that all affirmations of fact were accurate and were not breached, discuss only the contents of the User's Manual. Although appellants fail to specifically identify appellees' marketing, advertisements, warranties, sales literature and other representations that extend the express warranties, a proper consideration of the substantiality in a superseding cause analysis of the breach of a promise extended by the above promotional materials and literature requires that appellants be afforded the opportunity to produce the documents alleged to extend such warranties. These documents, as well as the User's Manual, should have been submitted to the court, pursuant to a motion for summary judgment or at a trial on the merits, in a determination of whether the breach, if any, of an express warranty, was a substantial factor in causing the deaths and injuries at issue. Accordingly, we reverse and remand for further proceedings on the counts alleging breach of express warranty.

**F**

## DENIAL OF REQUEST FOR CONTINUANCE FOR FURTHER DISCOVERY

Appellants contend that the trial court abused its discretion by refusing to continue the hearing on Summit's Motion to Dismiss or in the Alternative for Summary Judgment to allow further discovery. Offered in support of appellants' request for continuance was the affidavit of Jonathan E. Halperin, Esquire, stating that additional discovery may raise a genuine dispute as to a material fact, to wit: whether installing the AC powered smoke detector caused the deaths and injuries to the boys and/or whether appellees' failure to warn of the detector's limitations played a significant role in the resulting harm. Appellants' request for continuance was denied. The court thereafter proceeded to grant the motions to dismiss filed by Ryland and Summit.

Counsel for Ryland specifically told the court that he had "cite[d] only the well pleaded, factual allegations of their complaint, . . . . It is not, as they say, a motion for summary judgment." Ryland and Summit were adamant that their motions be treated as motions to dismiss. As such, the court needed only to consider whether the allegations in the complaint stated a cause of action. Further discovery was, therefore, unnecessary to decide the motion.

In any event, in view of our determination, *supra*, that whether other intervening acts of negligence were causes that superseded the negligence of Ryland should not have been decided pursuant to a motion to dismiss, we need not decide whether the court abused its discretion in denying a further continuance.

## II

## DAVID DIEFFENBACH AND KEVIN HIGHTOWER— SUMMARY JUDGMENT

Appellants next assign error to the court's grant of the Motions for Summary Judgment of appellees Dieffenbach and

Hightower because the issue of causation, including whether an intervening act is "foreseeable," is a question of fact for the jury to resolve.

The trial court entered its order pursuant to motions for summary judgment filed by Dieffenbach and Hightower, the opposition thereto filed by appellants and a hearing on November 9, 2000. On January 3, 2002, immediately preceding the court's ruling granting the motions to dismiss filed by Ryland and Summit, the court reaffirmed the above November 9, 2000 Order dismissing the counts of the amended complaint against Dieffenbach and Hightower.

 In accordance with the Maryland Rules, the trial court shall grant a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(f). The court must decide if the moving party is entitled to judgment as a matter of law after considering the undisputed facts. *Williams v. Mayor of Baltimore*, 359 Md. 101, 114, 753 A.2d 41 (2000) (citations omitted). Whether summary judgment was properly granted by the trial court is a question of law. *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 14, 852 A.2d 98 (2004).

 The Court of Appeals has stated that "[t]he standard of review for a grant of summary judgment is whether the trial court was legally correct." *Goodwich v. Sinai Hosp. of Balt., Inc.*, 343 Md. 185, 204, 680 A.2d 1067 (1996). We review the court's grant of summary judgment *de novo*. *Walk*, 382 Md. at 14, 852 A.2d 98.

 In reviewing the determinations of law, "we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party." *Remsburg v. Montgomery*, 376 Md. 568, 579–80, 831 A.2d 18 (2003). To valuate the trial court's grant of summary judgment, we evaluate "the same material from the record and decide [ ] the same legal

issues as the circuit court." *Law Offices of Taiwo Agbaje, P.C. v. JLH Properties,* 169 Md.App. 355, 367, 901 A.2d 249 (2006) (citations omitted). "We 'uphold the grant of a summary judgment only on the grounds relied on by the trial court.' " *Id.* (citation omitted).

Though not a substitute for a trial, a grant of summary judgment should not be disfavored and should be granted unless there exists some truly disputed material fact. *Bond v. NIBCO, Inc.,* 96 Md.App. 127, 134–35, 623 A.2d 731 (1993). A material fact is one that "will 'somehow affect the outcome of the case.' " *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242, 603 A.2d 1357 (1992) (citations omitted).

"[O]nly a genuine dispute as to a material fact is relevant in opposing a motion for summary judgment." *Id.* (internal quotations and citations omitted). "Summary judgment is not foreclosed if a dispute exists as to a fact that is not material to the outcome of the case." *McGraw v. Loyola Ford, Inc.,* 124 Md.App. 560, 572, 723 A.2d 502 (1999). When the moving party has set forth grounds sufficient for the grant of summary judgment, the opposing party must show with "some precision" that there is a genuine dispute of a material fact. *Seaboard Sur. Co.,* 91 Md.App. at 243, 603 A.2d 1357 (quoting *King v. Bankerd,* 303 Md. 98, 112, 492 A.2d 608 (1985)). Facts must be proffered by the opposing party which would be admissible in evidence. *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993). The requirement of a genuine issue of material fact is more than the existence of some alleged factual dispute and irrelevant factual disputes are not a genuine dispute of material fact. *Id.* at 738, 625 A.2d 1005.

If a fair-minded jury could return a verdict for the opposing party, then the trial court should not grant summary judgment. *Id.* at 739, 625 A.2d 1005. Even if the facts are undisputed, should they be susceptible to inferences that support opposition to the motion, the grant of summary judgment was improper. *Williams,* 359 Md. at 114–15, 753 A.2d 41.

## A.

## APPELLEES DIEFFENBACH AND HIGHTOWER'S DUTY TO WARN THAT THE ENCLOSED BASEMENT ROOMS COULD NOT BE USED AS SLEEPING AREAS

Appellants analogize Dieffenbach's duty to warn as to the dangers of using the basement for sleeping to that of BG & E in *Lane*, 338 Md. at 53, 656 A.2d 307, *overruled on other grounds by Balt. Gas & Elec. v. Flippo*, 348 Md. 680, 705 A.2d 1144 (1998), where the Court held that it was foreseeable that an unsecured half-ton wooden spool would be stolen and rolled down a hill, thereby injuring a child. The comparison with *Lane* is misplaced.

The circuit court's order stated that

[d]efendants, as home improvement contractors repairing water damage to the basement of the residence in 1994, did not have a legally cognizable duty on which to impose liability for damages and injuries sustained in the June 1998 fire, to warn the occupants that the basement rooms should not be used for sleeping.

Appellants argued at trial that Dieffenbach's duty was like that of an auto mechanic, who, while changing tires, saw that the car owner's brakes needed to be replaced or noticed that a car not made for off-road purposes was being so used. Appellees argued that if the mechanic had reason to believe that a car was being used improperly, he would have a duty to warn, as did Dieffenbach in the instant case. The following exchange ensued:

THE COURT: Well, it clearly wouldn't be, and it clearly isn't a smart thing to do, but there is a difference between that and a legally cognizant duty to warn somebody.

Because he is in there fixing it, maybe he knows or maybe he doesn't know that those rooms shouldn't be used as bedrooms, but you are saying, because of his position as the contractor, he has a duty to tell them they cannot use these as bedrooms?

[Appellants' counsel]: Based on his experience and his knowledge and also based upon the affidavits of my experts, who—one was an architect and one was an electrician—that someone in Dieffenbach's position should know better, should be able to look at this basement and say you cannot be using this room for this purpose and, if you do so, you are doing so at your own risk; but I think that dovetails into the next issue, which is permits.

Appellants cite no law to refute the finding of the trial court beyond the *Lane* case, which is factually inapposite.

In *Lane*, the foreseeability addressed by the Court was that of leaving the wooden spool unsecured on property that was frequented by children. *Lane*, 338 Md. at 40, 656 A.2d 307. The spool was stolen and rolled down a hill injuring a child, who was a mere bystander. *Id.*

Authors of treatises and texts have pointed out that courts sometimes confuse and sometimes discuss interchangeably the question of whether a duty exists in the first instance with the question of proximate cause. A negligent act, to be actionable, requires a duty to protect an injured party from risk of harm from the hazard in question, *i.e.*, an unreasonable risk. A specific fact situation can be analyzed in terms of a duty or, if a duty is assumed or held to exist, in terms of proximate cause. In this case, as did the parties, we assume the existence of a duty. *Yonce*, 111 Md.App. at 137, 680 A.2d 569.

First, the defendant must be under a duty to protect the plaintiff from injury. Second, the defendant must fail to discharge that duty. Third, the plaintiff must suffer actual loss or injury proximately resulting from that failure. *Manor Inn*, 335 Md. at 147–48, 642 A.2d 219; *Lamb v. Hopkins*, 303 Md. 236, 241, 492 A.2d 1297 (1985). *See Scott v. Watson*, 278 Md. 160, 165, 359 A.2d 548 (1976); *Peroti v. Williams*, 258 Md. 663, 669, 267 A.2d 114 (1970); *Myers v. Montgomery Ward & Co.*, 253 Md. 282, 291, 252 A.2d 855 (1969). The first element, duty, the subject of this portion of the opinion, "has been defined as 'an obligation, to which the law will give recognition

and effect, to conform to a particular standard of conduct toward another;' " it "is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Ashburn v. Anne Arundel County,* 306 Md. 617, 627, 510 A.2d 1078 (1986) (quoting W. Page Keaton, Prosser and Keaton on The Law of Torts, § 53, at 164 (5th ed.1984)). As to its importance in a determination of negligence, the Court has observed:

> [T]here can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury.... As the duty owed varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact; if there has been no breach of duty.

*Doe v. Pharmacia & Upjohn Co., Inc.,* 388 Md. 407, 414–15, 879 A.2d 1088 (2005); *see Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. at 148, 642 A.2d 219 (quoting *W.Va. Central R. Co. v. State ex rel. Fuller,* 96 Md. 652, 666, 54 A. 669 (1903)).

We note that, in determining whether a duty exists or in determining proximate cause, the relevant inquiry is the same, *i.e.,* whether the general type of harm sustained was foreseeable. *See Eagle–Picher,* 326 Md. at 194–97, 604 A.2d 445; *Henley,* 305 Md. at 333–37, 503 A.2d 1333; *Stone, supra.* As we mentioned in I C, *supra,* in *Stone,* the plaintiff alleged that he was forced to sell stock at a substantial loss in order to meet a margin call because the defendant had failed to record timely the release of an extinguished lien which was a precondition to obtaining a home equity loan. *Stone,* 330 Md. at 332–33, 624 A.2d 496. The Court, citing *Moran v. Faberge, Inc.,*

273 Md. 538, 332 A.2d 11 (1975), held that the plaintiff's losses were unforeseeable and because the defendants had no knowledge that the plaintiff was in the stock market or that he was in a financial crisis. *Id.* at 333, 624 A.2d 496. Moreover, the negligent act occurred a year prior to the harm. *Id.* at 332–33, 624 A.2d 496.

Indeed, it is arguable conceptually that foreseeability is less expansive as an element of duty than as an element of proximate cause. Foreseeability, in the context of determining the existence of a duty, involves prospective consideration of facts existing at the time of the conduct. Foreseeability, as an element of proximate cause, permits a retrospective consideration of the facts. For present purposes, it is a sufficient answer to appellees' argument to observe that foreseeability is an element in the determination of a duty and in the determination of proximate cause and is defined the same in each.

Further, appellants cite no dispute as to material fact that could act as the basis for a decision to reverse the trial court's grant of the motion. We decline such an invitation to do so notwithstanding appellants' argument that Dieffenbach and Hightower had to either pull the permits, or have others do it, so that an inspector "would have found" the bedrooms. We address that latter argument *infra*.

## B.

### FAILURE OF APPELLEES DIEFFENBACH AND HIGHTOWER TO APPLY FOR THE PROPER PERMITS

Appellants argue that permits were required for the work performed by Dieffenbach and Hightower because there likely were metal studs replaced and, as a disputed fact, is a question for the jury to decide. The necessity of a permit to re-wire the basement was conceded by Dieffenbach in what the court referred to as "a refreshing display of candor,"

which would have required a licensed electrician to have pulled the permits.

Appellants further hypothesize that, if the permits had been pulled, the inspectors from the City of Gaithersburg would have discovered the basement bedrooms and consequently warned the occupants of the violation. Further, the inspectors would have discovered that the Lis had originally finished the basement without a permit and the inspectors would have required that they submit plans to the County, complete with room designations, as was done after the 1998 fire.

Appellees argued at trial:

We are pretty far out here in terms of our connection with this case. This house was built in 1989, and then in 1991 there was an application to rent the house. Before that, the house had had a basement put in it that had been inspected by Gaithersburg. Nobody said anything about permits or there was anything wrong with it or its usages or anything. It had been inspected; there were no problems.

Although Dieffenbach claimed he did not need permits to do the work performed in 1994, the trial court deemed "the failure to obtain building or electrical permits" in 1994 not to be a cause in fact or legal cause of appellants' injuries, opining that

[appellants'] alleged causal link, that had [Dieffenbach and Hightower] pulled the required permits, inspectors for the City of Gaithersburg would have discovered that rooms in the basement were being improperly used as bedrooms, is based upon speculation. The record shows that, following repairs made to the basement in 1994, the City of Gaithersburg inspected the property on one or more occasions and failed to inform the owners or occupants that the basement rooms could not be used for sleeping.

We agree. Appellants contend that, whether a different department would have discovered the bedrooms and warned the owners and occupants should be decided by a jury. At trial, appellants argued that it would have been obvious to the City inspectors that it was not a proper use and that they

would have told the occupants, "they would have told the owners you cannot sleep down here, and I think it is a jury question to decide whether or not the City inspectors would have done their job correctly and, number two, whether this would have prevented the tragic deaths that occurred on June, 14th 1998[sic]. Thank you."

Appellants' brief cites no authority in support of that claim. Even if Dieffenbach and Hightower were required to inspect and warn about the bedrooms and smoke/fire detectors, it was the explicit duty of the City of Gaithersburg's inspectors who subsequently inspected the premises to ensure the safety of the rental property.

Absent disputed dispositive facts that would be admissible as evidence and create an issue(s) of fact, appellants cannot show a dispute of material fact to defeat the grant of summary judgment. *Shafer v. Interstate Auto. Ins. Co.*, 166 Md.App. 358, 375–76, 888 A.2d 1211 (2005).

As the record indicates that County inspectors came before and after Dieffenbach and Hightower, we do not engage in speculation, nor would it be proper for a jury to speculate as to what different inspectors may or may not have found, presuming, in a light most favorable to appellants, that inspectors from a different department would have necessarily responded simply because the required permits were obtained. Consequently, Dieffenbach and Hightower's failure to obtain permits cannot be the proximate cause of the injuries alleged by appellants.

## C.

## APPELLEES DIEFFENBACH AND HIGHTOWER— DUTY TO REPLACE OR RECOMMEND THAT THE OUTDATED AC–POWER SMOKE DETECTOR IN THE BASEMENT

The trial court found that the City of Gaithersburg did not require the replacement of the AC-power smoke/fire detector in 1994 when the repairs at issue were made. Appel-

lants argue that minimum recognized standards do not relieve Dieffenbach and Hightower of negligence if a reasonable contractor would take the extra precaution of installing dual smoke/fire detectors. *Leonard v. Sav–A–Stop Servs., Inc.,* 289 Md. 204, 212, 424 A.2d 336 (1981).

In appellants' most persuasive argument regarding Dieffenbach and Hightower, they reason that a common law duty based on the applicable standard for general contractors and electricians in Montgomery County required Dieffenbach and Hightower to replace the outdated smoke/fire detectors. Appellants posit that their experts stated that a reasonable home improvement contractor would have upgraded the smoke/fire detector for several reasons, including that it could have sustained damage due to the flood, the cost of upgrading was fifty dollars or less and, moreover, dual-powered detectors conformed with expectations of the consumers who occupied homes in the 1980's.

The trial court specifically found that the smoke/fire detectors "were in working order" both before and after the repairs occasioned by the flood damage. Because no reasonable inferences can be drawn from the facts in a light most favorable to appellants to impute negligence to Dieffenbach and Hightower, no duty to replace the smoke/fire detectors may be deemed to exist.

Assuming the correctness of the substance of the affidavits, they contain no facts which would support the legal conclusion that there was a duty to replace the smoke/fire detectors or a duty to suggest installation of smoke detectors with battery back-up system as part of their repairs.

Evaluating the same material and the same issues as the trial court, we hold that the court properly found that, because of their compliance with the building code and, because the smoke/fire detector at issue was in working order, as a matter of law, appellants' submissions in support of their motion for summary judgment fail to set forth facts which, if proven, would establish that Dieffenbach and Hightower were negligent in repairing the basement of the home. *Law Offices of*

*Taiwo Agbaje, P.C.,* 169 Md.App. at 367, 901 A.2d 249. We may affirm the grant of the Motion for Summary Judgment of Dieffenbach and Hightower only on the same grounds relied upon by the trial court. *Id.* We affirm the circuit court's grant of the motion for summary judgment of Dieffenbach and Hightower because, irrespective of the fact that the smoke/fire detector at issue was working and that there was compliance with the statute, there was no duty imposed upon appellants.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID TWO–FIFTHS BY APPELLANTS, ONE–FIFTH BY APPELLEES, THE LIS AND TWO–FIFTHS BY APPELLEES, RYLAND HOMES AND SUMMIT ELECTRIC.